McDONALD WELDING & MACHINE CO., INC. James A. Traficant, Jr., Plaintiffs,

v.

John LEHMAN, etc., Defendant.

No. C86–4486Y.

United States District Court, N.D. Ohio, E.D.

Nov. 26, 1986.

MEMORANDUM OF OPINION AND OR-
DER FINDING THE AWARDING OF
THE LOT III CONTRACT TO GICH-
NER ILLEGAL

KRENZLER, District Judge.

Plaintiffs commenced the above-cap-
tioned suit on October 22, 1986. Along
with the complaint, plaintiffs filed motions
seeking a temporary restraining order and
a preliminary injunction. Plaintiffs seek a
declaratory judgment that defendant's ac-
tivities to date and the exclusion of Mc-
Donald Welding & Machine Co., Inc. ("Mc-
Donald") from the bid competition process
at issue are invalid, unlawful and contrary
to the procurement policy of the United
States. Plaintiffs further request this
Court to enjoin the defendant and its offi-
cers, agents, employees and representa-
tives from allowing continued performance
and awarding another contract under
N00140–86–R–0987 to anyone other than
McDonald.

After a hearing on plaintiffs' motion for
a temporary restraining order, this Court
issued an Order, dated October 28, 1986,
overruling plaintiffs' motion and setting an
expedited briefing schedule in this matter.
Pursuant to this Order, the plaintiffs filed
a combined motion for summary judgment,
and the defendant filed a motion to dismiss
or for summary judgment. At that time,
defendant also filed the administrative
record in this case under seal. The Court
heard full arguments on these motions on
November 25, 1986. Because authorities
are sparse in this area of the law, the Court
concludes that a full discussion is warrant-
ed.

I.

A review of the administrative record
reveals the following facts. On February
13, 1986, the Naval Regional Contracting
Center in Philadelphia, Pennsylvania, is-
sued solicitation N00140–86–R–0987 to pro-
cure 1,024 mobile facility units ("MFV").
These MFV units are eight foot by eight
foot by twenty foot vans, which function as
containerized aviation maintenance facili-
ties for the United States Navy, Marine

Steven Bell, Asst. U.S. Atty., Cleveland, Ohio, for defendants.

Charles E. Raley, Israel, Raley & Cohen, Washington, D.C., Robert Douglas, Youngstown, Ohio, for plaintiffs.

Corps, and Air Force weapons systems. The MFV units are an integral support element for the Rapid Deployment Force and are used primarily as maintenance facilities for aircraft electronic and mechanical systems.

As originally structured, the solicitation was divided into two "lots." Lot I called for the production of 1,024 MFV units and contained a First Article Testing ("FAT") requirement. Lot II sought the production of the same 1,024 units, but waived the FAT requirements for those contractors who had already undergone and passed FAT. Thus, both offerors who had passed FAT, in addition to those contractors who had not previously passed FAT, were eligible to submit offers for the production of the 1,024 MFV units. The solicitation closed on April 12, 1986 with twelve offers received.

After the solicitation had closed, the Navy determined that it was necessary to obtain delivery of 337 MFV units in the shortest time period possible. The Navy further concluded that the total requirement should be reduced from a total of 1,024 MFV units to a total of 824 MFV units (the 337 MFV units plus an additional 487 MFV units). Since production lead time with FAT is seven months longer than production lead time without FAT, the contracting officer determined that acquisition of the urgently required 337 units would be restricted to those contractors which had already passed FAT. A "Justification and Approval," as required by 10 U.S.C. § 2304(f), was prepared by the contracting officer and approved at the required level to limit competition on the urgently needed 337 MFV units by requiring prior FAT passage.

The solicitation was revised to reduce the quantity to be procured from 1,024 MFV units to 824 MFV units. The amendment to the solicitation also established three lots. Lots I and II represented the unrestricted requirement for 487 MFV units. As before, Lots I and II could be bid upon by those firms which had passed FAT, as well as those firms which had not passed

FAT. Lot III was for the urgently needed 337 MFV units, and was restricted to those offerors who had previously passed FAT. The closing date for this revised solicitation was established as August 25, 1986.

Nine offers were submitted for the revised solicitation. Four firms submitted offers on Lot III, claiming eligibility for FAT waiver:

| FIRM | OFFER |
|------|-------|
| Gichner Mobile Systems | $ 6,972,085.40 |
| Craig Systems Corporation | 10,155,807.43 |
| McDonald | 6,227,824.20 |
| McDonald | 5,560,513.40 |
| McDonald | 5,360,725.40 |
| Allied Materials & Equipment Co., Inc. | 5,827,373.40 |

The Navy rejected the offers of Allied Materials & Equipment Co., Inc. ("Allied") and McDonald as not meeting the solicitation requirements, since neither McDonald nor Allied had yet passed FAT. After determining that Gichner Mobile Systems ("Gichner") and Craig Systems Corporation had each previously passed FAT, the Navy awarded the Lot III contract to Gichner as the low acceptable offeror on September 11, 1986. The award of Lot I/Lot II has not yet been made by the Navy. McDonald protested the Lot III award by filing protests with the General Accounting Office on September 17 and 18, 1986.

## II.

Plaintiffs assert that the Court is vested with jurisdiction over this matter pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq. See Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970) (unsuccessful bidder has standing to bring suit in district court under the APA). Section 702 contains a limited waiver of the sovereign immunity enjoyed by the United States and its agencies: "A person suffering legal wrong because of agency action ... is entitled to judicial review thereof."

Review under the APA is a review of the administrative record; the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551, *et seq.,* defines the composition of the record upon review. 31 U.S.C. § 3556.

The standard the Court must employ in reviewing the contracting officer's action is set forth in the APA, which provides that a reviewing court may hold unlawful and may set aside any agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

In their motion for summary judgment, plaintiffs contend that the actions undertaken by the defendant with regard to the award of Lot III to Gichner failed to conform to several statutory and regulatory requirements, and that judicial action to allow relief from those procurement defects is essential. Defendant raises a variety of other issues in its motion to dismiss or for summary judgment, but the Court finds that the statutory and regulatory issues addressed below are the only relevant issues.

### A.

First, plaintiff alleges defendant violated the competition requirements of CICA. By statute, the head of an agency in conducting a procurement for property or services is required to obtain "full and open competition through the use of competitive procedures." 10 U.S.C. § 2304. *See also* 10 U.S.C. § 2301 (The "policy of Congress" is to ensure "full and open competitive procedures shall be used by the Department of Defense.") Section 2304(c), however, provides exceptions to this general rule and details when the head of an agency may use procedures other than competitive procedures.

Plaintiffs contend that the Navy blatantly ignored the statutory competition requirements by its revision of the instant solicitation, which added the requirement of prior FAT passage for the 337 units under Lot III. Defendant counters that it was justified in determining that other than full and open competition would be used to procure the MFV units of Lot III, and that it properly followed the correct procedures pursuant to § 2304(c) and (f).

This Court is faced with the dilemma of how far it should pry into matters of defense policy. The Justification and Approval prepared by the Navy contains primarily conclusory statements about the urgent need for the 337 MFV units of Lot III. There were no operative facts provided upon which these conclusory statements were based. Under the facts and circumstances of this case, however, the Court finds that the Justification and Approval issued by the Navy minimally complies with the provisions of 10 U.S.C. § 2304(c)(2). This section allows for other than full and open competition where

> the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

*Id.* The Justification and Approval states that the inability to obtain the 337 MFV units of Lot III in as short a time as possible "will injuriously delay weapon system operational requirements and critically impact fleet/squadron readiness capacity. This would be clearly detrimental to the public interest." Justification and Approval at ¶ 9, pp. 4–5. Furthermore, the Justification and Approval was signed by an appropriate officer as required by 10 U.S.C. § 2304(f)(1)(B)(ii).

### B.

Second, plaintiffs contend that the defendant has violated the mandate of 31 U.S.C. § 3553, which establishes procedures for the withholding of contract awards and performance pending the resolution of protests filed with the Comptroller General. Section 3553(c)(1) states that "a contract may not be awarded in any procurement after the Federal agency has received notice of a protest with respect to such procurement from the Comptroller General and while the protest is pending." Section 3553(c)(2) contains the sole basis for avoiding the mandatory withholding of a contract award in the face of a protest. Similarly, § 3553(d)(1) requires that where

a Federal agency receives notice of a protest under this section after the contract has been awarded but within 10 days of the date of the contract award, the Federal agency ... shall, upon receipt of that notice, immediately direct the contractor to cease performance under the contract.... Performance of the contract may not be resumed while the protest is pending.

Section 3553(d)(2) contains the sole basis for avoiding the mandatory suspension of contract performance.

Plaintiffs allege that McDonald filed and furnished the defendant with notice of its September 17, 1986 protest (B–224014.4) well within ten days of the contract award of Lot III to Gichner. Nonetheless, the defendant refused to direct that contract performance be suspended as required by § 3553(d)(1), and ignored its obligations to comply with the requirements of § 3553(d)(2) for authorizing continued performance.

The defendant takes the position that the Navy has no obligation to order Gichner to stop performance on its contract to provide the Lot III MFV units. The defendant contends that the stay provisions of 31 U.S.C. § 3553 apply only upon receipt by the contracting agency of a protest from the General Accounting Office ("GAO"), and that the stay provisions are not effective upon receipt of a protest from an "interested party."

To support its position, the defendant first looks to the language of the statute itself. The stay provision for pre-award protests, § 3553(c)(1), makes its terms applicable only "after the Federal agency has received notice of a protest ... *from the Comptroller General* and while a protest is pending." (Emphasis added.) Since the post-award stay provisions of § 3553(d)(1) are silent on the identity of the person required to give notice of the existence of a post-award protest, the defendant contends that it would be consistent to conclude that notice from the GAO triggers the stay provisions for post-award protests.

Second, the defendant notes that while CICA calls for an agency response in all cases where the contracting agency "receives a notice of a protested procurement," § 3553(b)(2), the same statute provides that the contracting agency need *not* respond to protests "if the agency is sooner notified by the Comptroller General that the protest ... has been dismissed under section 3554(a)(3)." § 3553(b)(3). *See also* 21 C.F.R. § 21.3(f) (stating that the administrative rules of the GAO do not require an agency response where a protest has been dismissed). The defendant contends that the "clear intent of the statute" requires the GAO to conduct a preliminary examination of the sufficiency of the protest according to the guidelines in 31 U.S.C. § 3554(a)(3), and, following this preliminary examination, for the GAO to request an agency response, when appropriate. The GAO did not request such response until September 25, 1986—more than ten days after the award of the Lot III contract to Gichner.

 Upon consideration, this Court concludes that the defendant violated the stay provisions of § 3553(d)(1). While the Court concurs with the defendant that the notice referred to in § 3553(d)(1) is notice from the GAO, the Court further concludes that if a protest has been filed with the Comptroller General after a contract has been awarded but within ten days of the date of the contract award, then the GAO has an affirmative duty to notify the appropriate Federal agency within the ten-day period. A Federal agency cannot escape the stay provision requirements of § 3553(d)(1) simply because the GAO takes longer than ten days to conduct its preliminary examination of the sufficiency of the protest.

The Court's analysis is supported by the intent of Congress in passing CICA to close a "loophole" used by agencies to defeat meaningful review of their conduct. As stated by the Third Circuit in *Ameron, Inc. v. U.S. Army Corps of Engineers*, 787 F.2d 875 (3d Cir.1986):

CICA was enacted to remedy a major loophole in the long-standing GAO review procedure: by the time the GAO reviewed most bid protests, the protests had become moot because either the contract had been let or the contractor was engaged in performing under the contract. While GAO regulations provided for a stay of either the granting or performance of the contract in some circumstances, *see Merriam v. Kunzig*, 476 F.2d 1233, 1236 & n. 1 (3d Cir.1973), this stay was easily overridden by the contracting agency involved. The result was that most procurements became *faits accomplis* before they could be reviewed. This situation was identified by Congress as a contributing factor to the crisis of waste in federal procurement. *Id.* at 878–79.

■ Finally, the Court notes that pursuant to 4 C.F.R. § 21.3(a),[1] the GAO is required to give telephonic notice to the contracting agency within one (1) day of the filing of a protest. The Court finds that such telephonic notice is sufficient to trigger the stay provisions of § 3553(d)(1). Since the GAO should have notified the defendant on or before September 18, 1986, which was within ten days after the award of the Lot III contract, the defendant was obligated to follow the mandatory stay provisions of § 3553(d)(1).

### C.

■ The plaintiffs' final contention is that the defendant violated 10 U.S.C. § 2305 by awarding the Lot III contract to an ineligible source. By statute and regulation, "[t]he head of an agency shall evaluate sealed bids and competitive proposals based solely on the factors specified in the solicitation." § 2305(b)(1). *See also* 48 C.F.R. § 15.605(e). Plaintiffs allege that the defendant violated the express requirements of its revised solicitation by awarding the Lot III contract to Gichner. By the restrictive terms of Lot III, an award was

limited to a source who had previously passed the FAT qualifications and had furnished articles accepted by the government that are identical or similar to those required under the terms of Lot III. Plaintiffs contend that Gichner failed its only attempt on any FAT requirements and has never attempted to pass the FAT requirements currently required.

Upon review of the administrative record, this Court concludes that there is no evidence that Gichner previously *passed* the FAT requirements, as mandated by the restrictive terms of the Lot III solicitation. Defendant relies on a December 4, 1975 letter from the Navy to Gichner in an attempt to demonstrate that Gichner met the restrictive terms of the Lot III solicitation. This letter states: "The First Article Test Report, item 0003AB of Contract N00156–75–C–2029 is hereby *accepted.*" (Emphasis added.) Defendant further contends that while there was no formal testing and formal notification of the previous *passage* of FAT by Gichner, the procuring officer had the discretion to examine the surrounding facts and circumstances and decide who is qualified under the solicitation.

The Court disagrees with the defendant's position. Gichner either passed the FAT requirements or it did not pass the FAT requirements. The Court finds that the term "accepted" is not synonymous with the term "passed" in this situation. Thus, the December 4, 1975 letter is not evidence of previous passage by Gichner of the FAT requirements. Upon review of the administrative record, the Court finds that there is no concrete, objective evidence that Gichner previously passed the FAT requirements. Since the terms of the Lot III solicitation specifically required previous *passage* of FAT requirements, this Court finds that the defendant awarded the Lot III contract to an ineligible source in violation of 10 U.S.C. § 2305.

---

**1.** 4 C.F.R. § 21.3 provides in relevant part:

The General Accounting Office shall notify the contracting agency by telephone within 1 day of the filing of a protest, and shall promptly mail confirmation of that notification to the contracting agency.

### III.

In accordance with the foregoing, the Court makes the following findings:

(1) The defendant's awarding of the Lot III contract to Gichner was illegal and done in violation of 10 U.S.C. § 2305.

(2) The Lot III contract cannot be awarded to McDonald under the restrictive terms of the Lot III solicitation because McDonald has not yet passed FAT requirements.

(3) The defendant violated the mandatory stay provisions of 31 U.S.C. § 3553(d)(1) by not staying the performance of the Lot III contract with Gichner while a protest by McDonald was pending before the Comptroller General. Any work done under the contract with Gichner, therefore, was done illegally.

Based on these findings, the Court grants those portions of plaintiffs' motion for summary judgment that are in accordance with this Order. The remaining portions of plaintiffs' motion for summary judgment, which are inconsistent with this Order, are overruled. Furthermore, the Court overrules the defendant's motion to dismiss or for summary judgment, and overrules as moot, the plaintiffs' motion for a preliminary injunction. As to any future course of conduct between the Navy and the bidders in regard to the awarding of the Lot I/II and Lot III contracts, the persons involved shall follow the appropriate procurement laws. Judgment to be entered accordingly.

IT IS SO ORDERED.

### ORDER OF DISMISSAL AND JUDGMENT ENTRY

This Court, having filed its Memorandum of Opinion and Order in this case, which is hereby incorporated by reference, grants judgment for plaintiffs, McDonald Welding & Machine Co., Inc. and James A. Traficant, Jr., and against the defendant, John Lehman, Secretary of the Navy, finding that the Lot III contract awarded to Gichner Mobile Systems was illegal, and thus null and void. The Court further dismisses plaintiffs' claim that McDonald Welding & Machine Co., Inc. is entitled to the award of the Lot III contract because it is an ineligible bidder under the restrictive terms of the Lot III solicitation.

IT IS SO ORDERED.