**INFORMATION RESOURCES INCORPORATED, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 87–2203 SSH.**

United States District Court, District of Columbia.

Sept. 3, 1987.

Joseph A. Artabane, Robert E. Lieblich, Mark J. Riedy, Washington, D.C., for plaintiff.

George P. Williams, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

On August 28, 1987, the Court conducted a hearing consolidating plaintiff Information Resources Incorporated's (IRI) motion for a preliminary injunction with final argument on the merits. This expedited process was necessary because IRI is seeking to invalidate the award of a Government contract that soon will be fully performed.[1] Upon consideration of the administrative record, the pleadings and the attachments thereto, and the arguments of counsel, the Court concludes that the challenged procurement process complied with the applicable statutes and regulations, and therefore was not arbitrary or capricious. Consequently, plaintiff's motion for a preliminary injunction is denied and judgment is entered for defendants and against plaintiff.

### Facts

On May 27, 1987, the Farm Disaster Assistance Act of 1987, Pub.L. No. 100–45, 101 Stat. 318, became law. Section 13 of that statute called for the Secretary of Agriculture (the Secretary) to establish an advisory panel (the panel) to study the cost-effectiveness of fuel ethanol production. Panel members were to be appointed within 30 days of enactment (by June 26, 1987), and the panel was to submit a report of its findings within 90 days of enactment (by August 25, 1987).[2]

On or before June 12, the Secretary decided to allocate $100,000 to fund technical and logistical support to the panel, and on June 17 the Secretary designated Earle E. Gavett, Director of the United States Department of Agriculture's (USDA) Office of Energy, as the USDA official responsible for arranging support services for the panel. That same day, Frederick L. Potter, IRI's president, wrote to Gavett to follow up on a June 8 telephone conversation with Gavett. In that letter, Potter stated his desire "that you place my name, or Information Resources, Inc., on the list of groups to be considered for the USDA Ethanol Study...." Gavett placed Potter's name on his list of individuals to be considered for appointment to the panel.

On June 18, Gavett conferred with Charles V. Snearer, Director of USDA's Administrative Services Division, Economics Management Staff. Because of the small amount of time available within which to arrange staff support for the panel, Snearer suggested that Gavett contact officials at the United States Department of Energy (DOE) and attempt to obtain the needed support directly from DOE or, via an interagency agreement, from one of DOE's present contractors. On June 24, Gavett informed Snearer that he had contacted Donald K. Walter, Director of DOE's Biofuels and Municipal Waste Technology Division, and Ronald R. Loose, Director of DOE's Office of Renewable Energy Technologies, but had been unsuccessful in securing staff support through DOE. Gavett told Snearer that based on his conversations with Walter and Loose, he had concluded that Meridian Corporation (Meridian), a firm based in Alexandria, Virginia, was the only available contractor capable of providing the necessary services within the available time.

After conferring with Don Mann, the head of the USDA's procurement office, Snearer concluded that the circumstances warranted procurement of the panel sup-

---

1. The complaint was filed on August 7, 1987. Plaintiff's motion for a temporary restraining order was heard and denied on August 10, 1987. At the August 10, 1987, hearing, the hearing on plaintiff's motion for a preliminary injunction was scheduled for August 25, 1987. With the parties' concurrence, the hearing on the preliminary injunction motion was consolidated with the final decision on the merits and rescheduled for August 28, 1987. *See* Fed.R.Civ.P. 65(a)(2).

2. Section 13(b) directed that the panel include representatives of feed grain producers, feed grain processors, associations involved in ethanol production and marketing, and other related industries or institutions of higher education. No more than two panel members were to be federal employees. No money was appropriated to fund the panel or its work.

port services through the abbreviated solicitation process authorized by 41 U.S.C. § 253(c)(2) (agency may limit the number of bids solicited when the need "is of such an unusual and compelling urgency that the Government would be seriously injured" if the agency employed fully competitive procedures) and Federal Acquisition Regulation (FAR) 6.302-2. The next day, June 25, Gavett and a USDA contract specialist met with Meridian officials and presented them with a written "request for proposal." At some time later that same day, the Secretary announced his selections for the panel. Gavett was selected as the USDA's representative, but Potter, IRI's president, was not named to the panel.

On June 29, Gavett signed a document entitled "Justification for Other Than Full and Open Competition" (the justification). The justification outlined the statutory basis for the panel and the short time period available within which to prepare the panel's report. It then summarized the necessary capabilities of the support contractor, and identified Meridian as having "the unique capability" to fulfill the panel's needs. The justification summarized Meridian's qualifications and identified several projects through which DOE officials and Gavett had observed past Meridian work. Gavett indicated that he knew of no other firm that could provide both the technical (*e.g.*, information gathering and report drafting) and logistical (*e.g.*, meeting and travel arrangements) support needed by the panel, and indicated that time did not allow for the identification of other possible contractors. The same day, Meridian submitted its proposal to USDA.

The USDA reviewed Meridian's proposal on June 30, and July 1, and face-to-face contract negotiations took place on July 1. Upon agreement on the terms of the contract on July 1, the USDA directed Meridian to commence work immediately. On July 7, the contract was executed on behalf of Meridian and submitted to C. William Swank, chairman of the panel, for his approval. Swank approved the contract on July 9, and Snearer signed the contract for the USDA on July 14.

After learning informally of the Meridian contract, Potter appeared at the panel's first public meeting on July 21 and protested Gavett's apparent failure to have considered IRI for the panel support contract. On July 23, Potter, accompanied by counsel, met with Gavett and Snearer to discuss his concerns. On July 24, Gavett prepared a memorandum to Snearer in which he presented his response to IRI's contention that, based on Potter's telephone call of June 8 and letter of June 17, IRI should have been considered along with Meridian for the panel support contract. Gavett listed four reasons for failing to mention IRI in the justification for abbreviated bid solicitation: (1) the format sheet provided to him by the USDA's contract specialist did not indicate that he was required to mention other sources that had expressed an interest; (2) during the period during which Gavett was attempting to identify suitable contractors (June 9–25), Potter had been under consideration for a panel position and, because panel members were to serve without compensation, Gavett considered IRI to be ineligible for the support contract due to a conflict of interest; (3) Gavett had no reason to believe that IRI was capable of providing the range of technical and logistical support required; and (4) Gavett's belief that IRI and Potter were too closely associated with the ethanol industry to provide objective technical support to the panel. IRI formally protested the Meridian procurement to the General Accounting Office (GAO) late the same day.

On August 6, the justification was amended to incorporate Gavett's explanation for not having considered IRI in the initial justification and to include certain other required declarations which were not included in the initial justification. On August 7, Congress voted to extend the deadline for submission of the panel's report by 90 days, to November 28, 1987. IRI commenced this lawsuit the same day.

*Discussion*

I.  Failure To Suspend Performance

■ IRI argues that, regardless of the ultimate validity of the procurement pro-

cess, the USDA improperly failed to suspend performance of the Meridian contract when it was notified of IRI's protest to the GAO. Under 31 U.S.C. § 3553(d)(1), absent exceptional circumstances, a federal agency must immediately suspend performance of a contract if the agency "receives notice of a protest under this section after the contract has been awarded but within 10 days of the date of the contract award...."

In this case, the challenged contract was awarded to Meridian on July 14. On Friday, July 24, IRI filed its protest with the GAO and, virtually simultaneously, served a copy thereof on the USDA. The following Monday, July 27, GAO notified the USDA by telephone of IRI's protest, as required by 31 U.S.C. 3553(b)(1) ("Within one working day of receipt of a protest, the Comptroller General shall notify the Federal agency involved of the protest"); *see also* 4 C.F.R. § 21.3(a). The dispositive issue in this case is whether the "notice" referenced in 31 U.S.C. § 3553(d)(1) occurs when the agency receives actual notice of the protest through any means, or whether it occurs only when the agency receives the statutorily-prescribed notice from the GAO.

The Court concludes that the USDA's duty to suspend performance of the Meridian contract could be triggered only by notice from the GAO. This interpretation is compelled by the language and structure of the statute. The relevant provisions of 31 U.S.C. § 3553 are subsections (b), (c), and (d). Subsection (b) requires the Comptroller General to notify the agency within one working day of the filing of a protest. Subsection (c) involves protests seeking to prevent the award of a contract, and provides that an agency may not award a contract "after the Federal agency has received notice of a protest with regard to such procurement from the Comptroller General...." Finally, as quoted above, subsection (d), dealing with protests seeking to invalidate contracts already awarded, provides that the agency must suspend performance if the "agency receives notice of a protest under this section ... within 10 days of the date of contract award...." Taking these three provisions together, it is plain that "notice of a protest under this section" refers to the notice from the Comptroller General required by subsection (b). *McDonald Welding & Machine Co. v. Lehman*, 648 F.Supp. 1338, 1342 (N.D.Ohio 1986).[3]

Moreover, even if the meaning of the statute were less clear, the GAO, the agency charged with implementing 31 U.S.C. § 3553, has construed "notice" in subsection (d) to mean "notice of a protest from the General Accounting Office," 21 C.F.R. § 21.4(b), and such an interpretation is entitled to considerable deference from the courts. *E.g., American Maritime Association v. United States*, 766 F.2d 545, 560 (D.C.Cir.1985).[4] Thus, the Court finds that the USDA did not receive notice of IRI's protest, as contemplated in 31 U.S.C. § 3553(d)(1), until July 27, 13 days after the Meridian contract was awarded. Accordingly, the USDA was not required to suspend performance pending the GAO's decision on IRI's protest.

IRI also contends that, even if the USDA was not statutorily obligated to suspend performance, it was an abuse of discretion not to do so after Congress extended by 90 days the due date for the panel's report. While the Court is unsure whether failing to suspend a contract outside the ten-day

---

3. Despite *McDonald*'s clear language, IRI relies on the case for the proposition that notice to the GAO constitutes notice to the agency. On the contrary, *McDonald* addressed a situation in which the GAO failed to notify the agency within one working day, a failure which resulted in the agency's receiving notice after the relevant ten-day period had expired. Under those circumstances, the *McDonald* court concluded that it would be inequitable for the plaintiff to be penalized for the GAO's error. 648 F.Supp. at 1343. This is not such a case.

4. This reading of subsection (d) is fully consistent with the statutory framework within which the GAO processes protests. Under 31 U.S.C. § 3554(a)(3), the GAO is empowered to dismiss *sua sponte* any protest deemed frivolous on its face. Thus, the statutory allowance of one working day between the filing of a protest and the triggering of the automatic suspension provisions allows the GAO a brief opportunity to screen protests and filter out the clearly meritless before disrupting ongoing government contracts.

period could ever rise to the level of an actionable abuse of discretion, it is sure that this is not such a case. It is plain from the transcript of the panel's first meeting that from the start the consensus of the panel's members was that an extension from Congress would be necessary to prepare a suitable report. Given the fact that the GAO's decision would not, absent expedition, be due before the new report deadline of November 23, the USDA was justified in concluding that even with an additional 90 days, there was insufficient time to await resolution of IRI's protest before proceeding further with the Meridian contract.

## II.  Validity of the Procurement Process

██ The issue to which IRI has devoted the bulk of its attention during the course of this litigation is its contention that the USDA improperly failed to consider IRI for the panel support contract.[5] In the context of "disappointed bidder" cases, the most closely analogous situation, the courts of this circuit will find a procurement process arbitrary and capricious only if the plaintiff can demonstrate

> that (1) the procurement official's decision on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.

*Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973); *see also National Maritime Union of America, AFL–CIO*

*v. Commander, Military Sealift Command,* 632 F.Supp. 409, 413 (D.D.C.1986). The Court finds that the administrative record supports neither conclusion.

IRI recognizes that Potter sought appointment to the panel. Thus, prior to selection of the panel, it was reasonable for Gavett to exclude IRI from consideration for the support services contract. Moreover, under the unusual circumstances surrounding establishment of the panel and the need to provide support services as soon as possible after selection of the panel members, Gavett was justified in expediting the selection process. Upon careful review of the administrative record, the Court is convinced that by the time Gavett learned that Potter had not been selected for the panel (and consequently was no longer justified in excluding IRI on conflict of interest grounds) the selection of Meridian was sufficiently complete from the USDA's perspective that IRI could not reasonably expect Gavett to begin anew his evaluation process.

There were technical deficiencies in the justification. Such errors are unfortunate, but almost inevitable, by-products of expedited decision-making. However, the mere existence of deficiencies in the justification does not entitle IRI to the relief it seeks. Comparison of the format sheet provided by the USDA's contract specialist and Gavett's justification indicates to the Court that Gavett was including all of the information he believed was required.[6] At the

---

5.  FAR 6.303–2(a) lists the required contents of a justification for less than full and open competition. In its complaint, IRI cites four alleged deficiencies in the initial justification: (1) improperly finding that Meridian possessed the "unique" qualifications to perform the necessary work when Gavett knew, or should have known, that IRI. also was qualified to perform the work, *see* FAR 6.303–2(a)(5); (2) failing to identify IRI specifically as a firm that had expressed a written interest in performing the procured work, *see* FAR 6.303–2(a)(10); (3) failing to describe the efforts taken to solicit offers from as many sources as practicable, *see* FAR 6.303–2(a)(6); and (4) failing to include a determination that the anticipated cost of the contract would be fair and reasonable, *see* FAR 6.303–2(a)(7). The last of these objections was addressed in the August 9 addendum to the justification, in which it was stated that a cost analy-

sis of the Meridian contract was performed by the Defense Contract Audit Agency, the results of which indicated that the contract cost was fair and reasonable. Under FAR 6.303–1(e), such information may properly be added to the justification after award of the contract to avoid unreasonable delay in the acquisition. Similarly, IRI's objection that Snearer could not both sign the contract as contracting officer and approve the justification has been corrected by the USDA by the addition of approval from Allan S. Johnson, Snearer's superior. Thus, the gist of IRI's complaint is that that the USDA, and Gavett in particular, failed to accord IRI fair consideration for the panel support contract.

6.  With the exception of the format sheet, which was a part of the contemporaneous record of the decision-making process and therefore clear-

time that Gavett and the USDA settled on Meridian for the contract, that firm was the only known contractor deemed qualified to do the work. While the requirement that the justification identify all those who have expressed a written interest in the procurement is arguably broad enough to include identification of those not ultimately considered, the omission here was not prejudicial because the Court has found that at the time Gavett "selected" Meridian, IRI was still considered ineligible due to Potter's conflict of interest.

Accordingly, the Court concludes that plaintiff has failed to demonstrate that the selection of Meridian lacked a rational basis or involved a prejudicial failure to follow applicable statutes and regulations. Consistent therewith, this Memorandum Opinion is accompanied by an Order denying plaintiff's motion for a preliminary injunction and entering judgment on the merits in favor of defendants and against plaintiff.

### ORDER

This matter is before the Court for a ruling on plaintiff's motion for a preliminary injunction and a consolidated decision on the merits. For the reasons set forth in the accompanying Memorandum Opinion, upon consideration of the entire record, it hereby is

ORDERED, that plaintiff's motion for a preliminary injunction is denied. It hereby further is

ORDERED, that defendants' motion to affirm the agency's decision is granted. Judgment is entered in favor of defendants and against plaintiff, and this matter is dismissed with prejudice.

SO ORDERED.

---

ly an appropriate part of the administrative record, the Court does not rest its conclusion on any material found in the August 6 addendum to the justification. As a consequence, the Court does not reach the question of whether that post-protest material is properly part of the administrative record for purposes of judicial review, under FAR 6.303–1(e) or some other authority.