McDONALD WELDING and Machine Company, Inc., Plaintiff-Appellee,

v.

James H. WEBB, Jr., Secretary of the Navy, Defendant-Appellant.

No. 87–3068.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1987.

Decided Sept. 22, 1987.

Rehearing and Rehearing En Banc Denied Oct. 30, 1987.

Patrick M. McLaughlin, U.S. Atty., Steve D. Bell (argued), Asst. U.S. Atty., Chief, Civil Div., Cleveland, Ohio, for defendant-appellant.

Charles E. Raley (argued), Israel, Raley & Cohen, Washington, D.C., James S. Phillips, Robert Douglas, Youngstown, Ohio, for plaintiff-appellee.

Maurice H. Bitner (argued), Bitner & Haft, Parsippaney, N.J., Kenneth Bravo, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for intervenor-Gichner Mobile.

Before KENNEDY, MILBURN and NORRIS, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Defendant-appellant James H. Webb, Jr., Secretary of the Navy, ("defendant" or

"Navy") appeals the District Court's judgment granting partial summary judgment for the plaintiff. The District Court found that the defendant violated 10 U.S.C. § 2305 by awarding a procurement contract to Gichner Mobile Systems ("Gichner"), and also violated the mandatory stay provision of 31 U.S.C. § 3553(d)(1). The defendant raises two issues on appeal: 1) whether the District Court erred in finding that Gichner Mobile Systems ("Gichner") was ineligible to receive the Lot III MFV contract; and 2) whether the District Court erred in determining that the defendant violated the post-award stay provisions of 31 U.S.C. § 3553(d)(1). For the reasons set forth below, we reverse.

In 1986 the Navy solicited bids for 824 mobile facility units ("MFV units"). MFV units are vans, measuring eight feet by eight feet by twenty feet, which contain aircraft repair shops. The Navy subsequently decided that it urgently needed 337 MFV units. Consequently the contracting officer, in accordance with 10 U.S.C. § 2304(f), prepared a "Justification and Approval" which limited competition on the urgently needed 337 MFV units to those firms which had previously passed First Article Testing ("FAT"). The final solicitation was divided into three lots. Lots I and II were unrestricted solicitations for 487 MFV units; bidders who had previously passed FAT as well as those who had not could bid on these lots. Lot III was for the urgently needed 337 MFV units, and was restricted to those bidders who had previously passed FAT.

McDonald Welding & Machine Company ("plaintiff") and Gichner were among the bidders on Lot III. Although the plaintiff's bid was lower than Gichner's, the Navy rejected it because the plaintiff had not previously passed FAT. Finding Gichner's bid was the lowest bid by a contractor who had previously passed FAT, the defendant awarded the Lot III contract to Gichner on September 11, 1986.

The plaintiff filed protests of the Lot III award with the General Accounting Office ("GAO" or "Comptroller General") in September of 1986, which the GAO dismissed. The plaintiff[1] then brought suit against the defendant in the U.S. District Court for the Northern District of Ohio, seeking a declaratory judgment that the defendant illegally awarded the Lot III contract to Gichner[2] and illegally excluded the plaintiff from the Lot III bidding process. The District Court granted in part the plaintiff's motion for summary judgment, finding that Gichner was not eligible to bid on the Lot III contract and that therefore the award was illegal under 10 U.S.C. § 2305(b)(1), which requires the head of an agency to evaluate bids solely on the basis of the factors specified in the solicitation. The District Court denied the motion as to the plaintiff's claim that it was entitled to the award of the Lot III contract, finding that the plaintiff was not eligible to bid on the contract.[3] Defendant appealed.[4]

## I.

The defendant's first issue is whether the District Court erred in finding that Gichner had not passed FAT and consequently was not eligible to bid on the Lot III solicitation. Under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, a reviewing court may overturn an agency's

1. Congressman James A. Traficant was also a plaintiff in this suit, but on February 25, 1987 the District Court dismissed him as a party *nunc pro tunc,* finding that he lacked standing. He has not appealed.

2. Gichner moved to intervene in this action after the judgment under Fed.R.Civ.P.24(a). The District Court denied the motion, finding that it was not timely and that the defendant adequately represented Gichner's interest. On June 12, 1987 this Court granted Gichner leave to file a brief on appeal and to be heard at oral argument.

3. The opinion is reported at 648 F.Supp. 1338 (N.D. Ohio 1986). The District Court also found that the defendant lawfully complied with 10 U.S.C. § 2304(c) in excluding from competition those bidders who had not previously passed FAT.

4. On February 20, 1987 this Court granted the defendant's motion for a stay pending appeal. On March 24, 1987 this Court denied the plaintiff's petition for a rehearing *en banc* of the February 20 order.

actions, findings and conclusions if the court finds that they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Case law has interpreted this section as requiring the party challenging the agency's action to show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations. *See, e.g., Saco Defense Sys. Div. v. Weinberger,* 806 F.2d 308, 310–11 (1st Cir.1986); *Sea-Land Serv., Inc. v. Brown,* 600 F.2d 429, 430 (3d Cir. 1979).

■ The Navy limited the solicitation for the Lot III MFV units to those bidders who had previously "passed" FAT. The defendant attempted to show that Gichner had passed FAT by introducing a December 1, 1975 letter from the Navy to Gichner which stated that "[t]he First Article Test Report [of the MFV unit] is hereby *accepted."* Joint Appendix at 71 (emphasis added). The District Court, finding that "accepted" is not synonymous with "passed", ruled that the letter was not evidence that Gichner had passed FAT and that therefore Gichner was ineligible to receive the Lot III contract. *Id.* at 23.

The defendant argues that this determination by the District Court was wrong for two reasons. He claims first, the court wrongly decided that the Navy's determination that "accepted" meant "passed" was arbitrary and capricious, and second, the court should have admitted the affidavit of the engineer in charge of the MFV program, which states that "Gichner had previously passed first article test qualifications." Joint Appendix at 63–64.

■ The District Court erred in holding that the Navy's determination that "accepted" meant "passed" was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. In *Norwich Eaton Pharmaceuticals, Inc. v. Bowen,* 808 F.2d 486 (6th Cir.), *petition for cert. filed,* 55 U.S.L.W. 3714 (U.S. Apr. 9, 1987) (86–1633) this Court stated that " '[a]n agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict

with the expressed intent of Congress.' " *Id.* at 491 (quoting *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985)). An agency's construction of a word in its own solicitation document should be entitled to at least that much deference. The Navy's determination that its acceptance of Gichner's FAT meant that Gichner had passed FAT is very reasonable and has a rational basis. *See Sea-Land,* 600 F.2d at 430 (permissible for an agency to accept a bid having a computation formula different from the one contained in the solicitation proposal where difference was of form, not substance); The Random House College Dictionary 971 (1980) (defining pass to mean, among other things, "to cause to be accepted"). Consequently, the District Court erred in finding that Gichner was not eligible to receive the Lot III award.

Given our holding, we need not address the issue of whether the District Court should have admitted the affidavit of John Kraus, the engineer in charge of the MFV program.

## II.

■ The defendant also argues that the District Court erred when it determined that the defendant had violated the post-award stay provision of the Competition in Contracting Act, 31 U.S.C. § 3553(d)(1), which provides the following:

If a Federal agency receives notice of a protest under this section after the contract has been awarded but within 10 days of the date of the contract award, the Federal agency (except as provided under paragraph (2)) shall, upon receipt of that notice, immediately direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract. Performance of the contract may not be resumed while the protest is pending.

Section 3553(b)(1) provides that "[w]ithin one *working day* of the receipt of the

protest, the Comptroller General shall notify the Federal agency involved of the protest." (emphasis added). The District Court agreed with the defendant that "notice" in section 3553(d)(1) means notice by the Comptroller General, head of the General Accounting Office, and not notice by anyone else. We agree with this conclusion.

 The District Court further found that the GAO received notice of the plaintiff's protest on Wednesday, September 17, 1986. The evidence does not support this finding, however. The plaintiff has the burden of proof of showing when the GAO received notice of its protest. The only evidence in the record of the GAO's receipt of notice was in the Comptroller General's decision dismissing the plaintiff's protests, which states that the plaintiff filed its first post-award protest on Friday, September 19, 1986. The record contains copies of the protests which confirm that the plaintiff sent them by Western Union Mailgram on September 17, 1986, but they evidence only the date of sending, not the date of receipt. The date of sending of the protests is not relevant under section 3553(d)(1).

The District Court also held that the post-award stay provision of section 3553(d)(1) is activated when the Comptroller General should have notified the agency of a protest within ten days of the award, even if it in fact did not do so. We find, however, that in order to activate the stay the Comptroller General must actually notify the agency. Section 3553(d)(1) requires the agency to direct the contractor to cease performing the contract only if the agency actually receives notice of a protest from the Comptroller General within ten days of the award. The purpose of the statute is to stop the contractor who was awarded the contract from proceeding with its performance pending the protest. Unless the agency receives the required notice, it cannot direct that performance be stayed. Once ten days have passed since the award, the contractor should be able to proceed without concern that the agency may later direct him to cease performing the contract.

The plaintiff has the burden of proof of showing that the agency received notice of its protest from the Comptroller General within ten days after the award. In the case before this Court, no evidence in the record indicates that the Comptroller General notified the Navy of the plaintiffs' protests on or before September 21, 1986, the tenth day after the award of the Lot III contract. The only evidence as to when the Comptroller General notified the Navy of the plaintiff's protests indicates that the Navy was notified on September 25, 1986, fourteen days after the award of the Lot III contract. Record # 6, Exhibit H; Record # 22, Exhibit B. Therefore, the District Court erred in holding that the Navy violated the post-award stay provision of section 3553(d)(1).

Accordingly, the judgment of the District Court is REVERSED and the case is REMANDED with instructions to dismiss the action.