900 F.2d 259
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BUCKEYE TERMINIX COMPANY, Plaintiff-Appellee,
v.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
Jack Kemp, Secretary; United States Department of
Housing and Urban Development, Columbus
Office, Defendants-Appellants.
 No. 89-3729.
 United States Court of Appeals, Sixth Circuit.
 April 18, 1990.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and DOUGLAS W. HILLMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 The United States Department of Housing and Urban Development ("HUD") appeals the district court's grant of a limited permanent injunction, pending the conclusion of all administrative appeals, which prohibits HUD from denying participation in HUD programs to Buckeye Terminix Co., Inc. ("Buckeye"). Because we conclude that Buckeye should not be excused from exhausting administrative remedies before seeking judicial review, we reverse the judgment of the district court.
 
 I.
 
 2
 Buckeye Terminix Company is a large termite and pest control company located in Columbus, Ohio. Buckeye is owned and operated by its president, John Breen. Buckeye's business is divided into several departments, and only the pre-treat department is involved in the instant case. Buckeye contracts with builders to pre-treat homes for termite protection as they are built and then provides the builder with a soil treatment guarantee. That guarantee is provided to the home buyer who must present it at closing in order to be eligible for HUD mortgage insurance. Buckeye does not contract with HUD, but has an interest in remaining HUD-qualified for pretreating homes insured by HUD.
 
 
 3
 In July of 1987, the Ohio Department of Agriculture ("ODA") initiated an investigation of Buckeye because it had received reports that pre-treats were not being performed. Buckeye claims it then initiated its own investigation and as a result, fired two servicemen and their supervisor. Buckeye entered into negotiations with ODA and reached an agreement whereby Buckeye contacted every affected home owner and offered free remedial options.
 
 
 4
 On March 18, 1988, HUD sent a notice to Buckeye's President, John G. Breen imposing a "limited denial of participation" or "LDP" (the 1988 LDP) in accordance with 24 C.F.R. Sec. 24.700 et seq. (1989). The notice stated that HUD had adequate evidence of serious irregularities in the past performance of Buckeye and Breen with regard to HUD's FHA single family housing program, specifically that Buckeye had falsely certified that termite soil treatments had been performed on three properties in Columbus. The notice also informed Breen that he had a right to be represented by counsel and present all relevant evidence at a hearing.
 
 
 5
 An LDP may be issued by a HUD office manager upon adequate evidence of offenses which would be cause for debarment. 24 C.F.R. Sec. 24.705(a)(8). Such offenses include:
 
 
 6
 Conviction of or civil judgment for (1) commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction ... (3)) Commission of ... forgery, ... making false statements, [or] making false claims ... [or] (4) commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a person.
 
 
 7
 24 C.F.R. Sec. 24.305(a). An LDP is a less severe remedy than suspension or debarment. It is generally limited to "participation in the program under which the cause arose," "may be imposed for a period not to exceed twelve months," and "is effective only in the jurisdiction of the office imposing it." 24 C.F.R. Secs. 24.710(a)(1)-(a)(3). HUD regulations provide that an LDP "shall not affect the right of the Department to suspend or debar any person." Id. at Sec. 24.710(b). An LDP is effective as of the date notice is sent. Id. at Sec. 24.711(a)(1). Within thirty days of receipt of the notice the participant has the right to request a conference with the official imposing the sanction. Id. at Sec. 24.711(a)(4), (b). Such a conference must be held within 10 business days of the request, and the participant has the opportunity to present relevant information to the official or designee. Id. at Sec. 24.712. Within twenty days after the conference, the official who imposed the LDP must issue a written decision "to withdraw, modify or affirm" the LDP. Id. Within thirty days of the decision the participant then has the right to request a formal hearing before the department.
 
 
 8
 On March 25, 1988 a conference was held between Buckeye and HUD. As a result, the LDP was modified to permit Buckeye to continue participation in HUD programs under strict scrutiny. Under the modified LDP, Buckeye was required to submit weekly reports to HUD which included chemical application records as well as monthly soil treatment test data. From March 18, 1988 to March 18, 1989, Buckeye performed soil treatments and issued five-year guarantees on over 1500 HUD financed homes. When the LDP expired on March 18, 1989, no HUD action was taken, even though HUD was aware of the pending criminal case as a result of its participation in the ODA investigation and ensuing state grand jury proceedings.
 
 
 9
 On May 12, 1989, Buckeye pled guilty in Franklin County Ohio Court of Common Pleas to violations of Ohio Rev.Code Secs. 2913.43 and 2913.31 (Baldwin 1986). Ohio Rev.Code Sec. 2913.43 prohibits persons, by deception, from causing another to execute any writing which disposes of or encumbers property, or by which a pecuniary obligation is incurred. If the value of the property is between $300 and $5,000, the violation is a fourth degree felony. Ohio Rev.Code Sec. 2913.31 prohibits persons with "purpose to defraud" from "forging any writing so that it purports to be genuine when it is actually spurious ... or to have been executed at a time or place or with terms different from what was in fact the case." Such a violation is also a fourth degree felony.
 
 
 10
 On May 22, 1989, based on Buckeye's guilty plea in state court, the Columbus office of HUD issued notice of a second LDP (the 1989 LDP). On May 24, 1989 Buckeye filed suit in United States District Court for the Southern District of Ohio, for declaratory and injunctive relief against the 1989 LDP, and moved for a temporary restraining order ("TRO"). The district court set the matter for trial on the merits and for ruling on the motion for permanent injunction, both of which were consolidated in accordance with Fed.R.Civ.P. 65(a)(2). On June 28, 1989, after a two day trial, the court reached a decision granting a "limited permanent injunction" and holding that Buckeye was not required to exhaust administrative remedies before seeking a permanent injunction. The court further held that HUD's regulations as applied to Buckeye violated due process, and that HUD employed a punitive approach in issuing the 1989 LDP in violation of its regulations. This timely appeal followed.
 
 
 11
 On September 1, 1989, HUD sent Breen and Buckeye notices that it was proposing to debar them from participating in HUD transactions for three years from the date of the 1989 LDP, and suspending them from participation in HUD transactions. The effect of the suspension was stayed pending the outcome of the appeal. Under 24 C.F.R. Sec. 24.713, when an LDP is followed by a suspension, the LDP is superceded by the suspension. A suspension may be appealed by filing a request for hearing within 30 days of receipt of notice. Buckeye filed a request for a hearing in this case on September 27, 1989.
 
 II.
 
 12
 Appellate review of a district court's findings of fact is controlled by the clearly erroneous rule. Fed.R.Civ.P. 52(a). Appellate Courts may freely review a district court's legal conclusions. Loudermill v. Cleveland Board of Education, 844 F.2d 304, 308 (6th Cir.1988).
 
 
 13
 The district court recognized that the underlying rationale for exhaustion is to permit the administrative agencies to produce a proper factual record and to save for the courts those legal issues which the administrative agencies are precluded from deciding. The district court concluded that exhaustion of any administrative remedy would be futile and inadequate because the 1988 and 1989 LDP's are based on substantially the same information. The court further found that Buckeye had firmly established an irreparable injury unless immediate judicial intervention was permitted because Buckeye had established a likelihood that the LDP/debarment procedure would insure financial collapse. Nagel v. Thomas, 666 F.Supp. 1002, 1009 (W.D.Mich.1987) (citing Southern Ohio Coal v. Donovan, 774 F.2d 693 (6th Cir.1985), amended, 781 F.2d 57 (6th Cir.1986)).
 
 
 14
 Finally, the district court invoked the principle in Mathews v. Eldridge, 424 U.S. 319, 330-331 (1976) which the court stated "unequivocally grants the court jurisdiction to rule on constitutional challenges to administrative procedures." The court determined that HUD's actions in the instant case violate due process under Mathews because the 1988 and 1989 LDP's issued against Buckeye are based on information HUD knew for well over a year before instituting the 1989 LDP and debarment procedures. The district court concluded that HUD's failure to grant Buckeye a pre-termination hearing is an unwarranted hardship and that such a hearing would impose no additional hardship on the agency. The court stated that the failure to hold a pre-termination hearing violated Buckeye's constitutionally protected due process rights.
 
 A.
 
 15
 The district court's finding that any administrative remedy would be futile because HUD's 1989 LDP is premised on the same information as the 1988 LDP is factually incorrect. While the 1988 LDP was based on three specific instances in which Buckeye had certified termite treatments that were not completed until four weeks later, the 1989 LDP was based on Buckeye's guilty plea to 15 counts of fraud and forgery for treatments that were never performed. Each of the 15 counts represents Buckeye's dealings with one of 15 builders, and represents failure to treat approximately 50 homes per builder. Therefore, not only did the total number of certificates in the '89 LDP exceed the '88 LDP, but each involved different types of fraud. The '88 LDP was based on false dating of certifications, where the '89 LDP was based on Buckeye's admission that it had never performed the treatments. Therefore, even though both LDP's arose out of continuous patterns of wrongdoing by Buckeye they are not based on the same "facts and circumstances" as the district court determined. Because we find that the LDP's are not based on the same facts and circumstances, we conclude that the district court's finding that exhaustion of administrative remedies would be futile is clearly erroneous.
 
 B.
 
 16
 The district court also excused Buckeye from exhaustion of administrative remedies based on the risk of irreparable injury. The district court based its finding on the testimony of John Breen, President of Buckeye, and an independent accountant, that the immediate loss of pre-treat work as a result of the imposition of the LDP or debarment would result in Buckeye's financial demise. Under 24 C.F.R. Sec. 24.220(a), however, the LDP does not require an immediate cessation of work, as Buckeye represented to the court. Rather, the regulations allow work in progress to be finished. Therefore, the court's findings on irreparable injury are clearly erroneous.
 
 C.
 
 17
 The district court relied on this court's decision in Southern Ohio Coal v. Donovan, 774 F.2d 693 (6th Cir.1985), amended, 781 F.2d 57 (6th Cir.1986), for the proposition that the exhaustion of administrative remedies is excused where the constitutional violation is clear and the risk of erroneous deprivation is high. At issue in Donovan was the Secretary's refusal to give mine operators a predeprivation hearing before granting temporary reinstatement of mine employees. Id. at 698. In excusing exhaustion, this Court held:
 
 
 18
 The Supreme Court's decision in Mathews v. Eldridge, supports the view that exhaustion is not required before a district court may entertain constitutional challenges to an agency's procedures. The mine operator's due process challenge here is entirely collateral to any substantial claims under the Mine Act.
 
 
 19
 Id. at 702.
 
 
 20
 Donovan was amended in response to a petition for rehearing, and the court stated that where a constitutional challenge is in effect to a statute rather than agency regulations, exhaustion would serve no purpose since the agency has no power to declare an authorizing statute unconstitutional. 781 F.2d 57, 57-58 (6th Cir.1986). The Donovan Court then distinguished SEC v. WACO Financial, Inc., 751 F.2d 831, 834 (6th Cir.1985), cert. denied 474 U.S. 818, 106 S.Ct. 65 (1985), in which the court dismissed a challenge to the constitutionality of an NASD disciplinary action because plaintiff failed to exhaust administrative remedies. In amending its opinion, the Donovan court noted that the constitutional challenge before it was in effect to the authorizing statute which the agency had no power to declare unconstitutional, in contrast to the challenge to the constitutionality of the agency procedures found in WACO. 781 F.2d at 57-58. The WACO court stated:
 
 
 21
 The issue ... has nothing to do with the constitutionality of a congressional enactment. They question the constitutionality of procedures followed by an agency and its delegate. They did not question the constitutionality of the Securities Exchange Act. They attacked procedures permitted by the SEC in administering this Act. These questions should have been raised in the administrative proceedings.
 
 
 22
 Id. at 834.
 
 
 23
 In the instant case, Buckeye does not challenge the enabling statute, but only challenges the regulations which provide for a prompt post-deprivation hearing instead of a pre-deprivation hearing. Because Buckeye's challenge is more akin to WACO, it is required to exhaust its claims through administrative hearings. Moreover, Buckeye's allegations that HUD's LDP regulations violated due process by failing to provide a pre-deprivation hearing is foreclosed by this court's decision in Transco Security, Inc. of Ohio v. Freeman, 639 F.2d 318, 321-323 (6th Cir.1981), cert. denied, 454 U.S. 820 (1981), which held that the deprivation of the right to bid on government contracts is not a property interest, and that for persons who have ongoing dealings with the government, constitutional requirements for due process violations of liberty interests are satisfied by a prompt post-deprivation hearing. 639 F.2d at 321-323. Thus, we find that the constitutional challenge to HUD's discretionary regulations on the basis of HUD's failure to provide a pre-deprivation hearing does not fall under the exception to the exhaustion doctrine.
 
 III.
 
 24
 For the foregoing reasons, we REVERSE the judgment of the district court and REMAND this case with instructions to require Buckeye to exhaust administrative remedies before seeking judicial review.
 
 
 
 *
 The Honorable Douglas W. Hillman, Chief District Judge for the Western District of Michigan, sitting by designation