HOUSING STUDY GROUP, et al., Plaintiffs,

v.

Jack F. KEMP, Secretary of Housing and Urban Development, et al., Defendants.

Civ. A. No. 90–0244.

United States District Court, District of Columbia.

May 16, 1990.

Robert C. Seldon, John E. Bigstadt, Joseph A. Kijewski, Krooth & Altman, Washington, D.C., for plaintiffs.

Mark Nagle, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This is yet another, but final, chapter in the ongoing dispute which has arisen as a result of the announcement by Jack F. Kemp, Secretary of Housing and Urban Development ("HUD"), of his intention to terminate the coinsurance program established under Section 244 of the National Housing Act, as amended, 12 U.S.C. § 1715z–9. Plaintiffs are two active mortgage bankers approved by HUD to participate in the coinsurance program and a trade association of which the two mortgage bankers are members. Defendants are Jack F. Kemp, Federal Housing Commissioner C. Austin Fitts, and Deputy Federal Housing Commissioner Peter H. Monroe. Presently pending before the Court are (1) plaintiffs' motion for permanent injunction with respect to Coinsuring Lender Letters Nos. 89–12, 90–1, and 90–2, (2) plaintiffs' motion for permanent injunction with respect to the Interim Rule published by HUD at 55 Fed.Reg 11,342 (March 27, 1990), (3) defendants' emergency motion for clarification of the Court's April 25, 1990 memorandum opinion, 736 F.Supp. 321, and (4) plaintiffs' third motion for a temporary restraining order and preliminary injunction with respect to HUD's most recent action, placing the two mortgage bankers on probation.

Consolidated argument on the motions was taken at a hearing before the Court on May 11, 1990. The Court's rulings follow.

### I.

The facts of this case, extensively discussed in two previous opinions of the Court and incorporated herein by reference, shall not be repeated here in detail. *See* Memorandum Opinion, February 6, 1990; Memorandum Opinion, April 25, 1990. Nevertheless, a brief discussion of the procedural background of this case and developments since the issuance of the latter opinion is necessary.

Plaintiffs originally moved for a temporary restraining order to enjoin defendants from giving effect to Coinsuring Lender Letters Nos. 89–12, 90–1, and 90–2, which would have established certain precommitment review requirements upon participating coinsuring lenders.[1] On February 6, 1990, the Court denied that motion and set a briefing schedule for plaintiffs' motion for preliminary injunction and defendants' dispositive motion. On March 6, 1990, the day before the scheduled hearing on these motions, defendants informed the Court that because they were concerned with the possible outcome of the pending motions, they had issued a new Interim Rule governing precommitment review for lenders participating in the coinsurance program and had transmitted it to the appropriate committees of the House and Senate.[2] HUD published the Interim Rule in the Federal Register on March 27, 1990. 55 Fed.Reg. 11,342. On April 19, 1990, plaintiffs filed a second motion for temporary restraining order and preliminary injunction to enjoin enforcement of the Interim Rule. On April 25, 1990, the Court granted plaintiffs' first motion for preliminary injunction with respect to the Lender Letters, granted plaintiffs' second motion for a temporary restraining order with respect to the Interim Rule, and granted, in part, defendants' motion to dismiss, dismissing counts IV and V of the complaint. Deadlines were established for further briefing on plaintiffs' motion for permanent injunction with respect to the Lender Letters and plain-

---

1. These precommitment review procedures had not previously existed for approved coinsured lenders.

2. This Rule sought to establish the same precommitment review procedures that HUD had attempted to put in place with the Coinsuring Lender Letters.

tiffs' motion for permanent injunction with respect to the Interim Rule.

On May 2, 1990, defendants filed an emergency motion for clarification of the Court's April 25, 1990 Memorandum Opinion, seeking to determine the precise steps they would be required to take to fully satisfy the notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, and 42 U.S.C. § 3535(o), which the Court had determined they had previously failed to do.

In addition, on May 2, 1990, HUD placed several approved coinsuring lenders on probation and suspended others from further participation in the coinsurance program. Among those placed on probation were plaintiffs ABG Financial Services, Inc. ("ABG") and Centennial Mortgage, Inc. ("Centennial"). As a result of these notices of probation, ABG and Centennial, although permitted to continue to originate and process applications for mortgage insurance, were required to receive HUD approval before the issuance of firm commitments.[3] On May 4, 1990 plaintiffs filed a third motion for temporary restraining order and preliminary injunction, requesting the Court to enjoin HUD from giving effect to the notices of probation sent to ABG and Centennial.[4]

Consideration has been given to the parties' multiple submissions, the argument of counsel, and the entire record.

## II.

### A. Coinsuring Lender Letters

In its April 25 Memorandum Opinion, the Court found that plaintiffs had shown a likelihood of success on the merits of their claim that the coinsuring lender letters were substantive rules requiring full notice and comment rulemaking pursuant to 5

U.S.C. § 553 and 42 U.S.C. § 3535(o). Defendants had argued, and continue to argue, that the Coinsuring Lender Letters are "procedural rules" exempt from notice and comment pursuant to 5 U.S.C. § 553(b)(A).[5] In support of this argument, defendants relied and continue to rely almost exclusively on *American Hospital Association v. Bowen*, 834 F.2d 1037 (D.C. Cir.1987).

None of the submissions presented since the issuance of the April 25 Memorandum Opinion have persuaded the Court that its original analysis, which shall not be repeated here, was in error. The Lender Letters, if given effect, would *substantially* alter the rights and interests of approved coinsuring lenders who had previously enjoyed autonomy in issuing firm commitments. They are substantive rules which require full notice and comment rulemaking. Because these procedures were not followed, plaintiffs are entitled to permanent injunctive relief prohibiting HUD from giving force and effect to those Letters until such time as HUD complies with the full notice and comment requirements of the APA and HUD's enabling legislation.

### B. HUD's Interim Rule

Concerned that they might receive an unfavorable ruling with respect to the Coinsuring Lender Letters, by publishing an Interim Rule in the Federal Register on March 6, 1990, defendants began the administrative process necessary for establishing the identical precommitment review procedures that the Lender Letters would have established. However, HUD abbreviated the normal period for accepting public comment after publication in the Federal Register from 60 to 30 days,[6] claiming that

---

**3.** In essence, these conditions of probation were identical to the precommitment review requirements that HUD had earlier sought to establish through the Coinsuring Lender Letters and the Interim Rule published on March 27, 1990.

**4.** On May 4, 1990, the Court, *sua sponte,* extended the temporary restraining order with respect to the Interim Rule for an additional ten days so as to afford the parties adequate time to complete briefing.

**5.** This section exempts "interpretative rules, general statements of policy, or rules of agency organization, practice or procedure" from the APA's notice and comment requirements.

**6.** The requirement that the public be afforded a minimum of 60 days to submit comments is found in HUD's own regulations, at 24 C.F.R. § 10.1.

the abbreviation was justified by the alarming rate of increase in defaults by approved coinsuring lenders and the danger of future losses to the FHA General Insurance Fund. In their second motion for a temporary restraining order, plaintiffs argued that defendants had not demonstrated the "good cause" required by the APA for dispensing with full notice and comment.[7] In issuing a temporary restraining order enjoining enforcement of the Interim Rule, the Court agreed with plaintiffs and found that defendants had not met their burden of establishing "good cause." That analysis need not be repeated here.[8] Once again, none of the submissions presented to the Court since that ruling provide a basis for the Court to alter its original conclusion.[9] Accordingly, defendants shall be enjoined from giving force and effect to the Interim Rule until the procedures outlined below have been satisfied.

Having decided that full notice and comment is required, the Court must determine whether defendants must start the entire rulemaking process anew. In their emergency motion for clarification, defendants ask the Court to clarify its previous ruling and specify that HUD can satisfy the "full notice and comment" that the Court found was required by publishing a new notice, as a proposed rule, that extends the public comment period by 30 days (for a total of 60 days), thereafter considering all comments received during both periods, then publishing the rule in final form to take effect 30 days thereafter, in accordance with 42 U.S.C. § 3535(*o* ). Defendants' motion shall be granted.

Although the parties disagree over the amount of actual losses to the FHA General Insurance Fund as a result of defaults in the coinsurance program, HUD has known about problems in the industry for over a year and a half. HUD now seeks to justify the abbreviated public comment period as an emergency measure that is desperately needed because of defaults in the coinsurance program in the past few months that are increasing at an alarming rate, especially among previously unsanctioned lenders.

■ Although plaintiffs vigorously dispute this assertion, the purposes of § 553 of the APA and the notice and comment requirements of HUD's own regulations will best be served by permitting HUD to extend the public comment period by 30 days, as they request, rather than requiring them to begin the rulemaking process *ab initio*, provided that HUD consider all comments made during both thirty day

---

7. The "good cause" exception to the APA permits an agency to dispense with notice and comment rulemaking "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B).

8. The Court notes that exceptions to the notice and comment requirements of § 553 are to be "narrowly construed and only reluctantly countenanced." *American Fed'n of Gov't Employees, AFL–CIO v. Block,* 655 F.2d 1153, 1156 (D.C.Cir. 1981). Although our court of appeals has noted that "[c]ourts have upheld a 'good cause' exception when notice and comment could result in serious damage to important interests," *Nat'l Fed'n of Federal Employees v. Devine,* 671 F.2d 607, 611–12 (D.C.Cir.1982) (citations omitted), the Court does not find the facts of the instant case justify abbreviating the normal 60 day period for receiving comments after publication in the Federal Register.

9. HUD continues to assert that it is exempt from the rulemaking requirements of the APA pursuant to 5 U.S.C. § 553(a)(2) which exempts matters related to, *inter alia,* public loans, grants, or contracts, and that its actions are taken pursuant to its own regulations which require HUD to "provide for public participation in rulemaking with respect to all HUD programs and functions ... even though such matters would otherwise not be subject to rulemaking by law or Executive policy." 24 C.F.R. § 10.1. HUD maintains that unlike the APA, HUD's regulations do not contain a "good cause" requirement for dispensing with notice and comment. 24 C.F.R. § 10.1 permits issuance of a rule without prior public comment when the Secretary finds "that notice and public procedure are impracticable, unnecessary, or contrary to the public interest" and that "the reasons for the determination shall be stated in the rulemaking document." Assuming, without deciding, that HUD's assertions are sound, the Court nevertheless finds that HUD has failed to establish that notice and public procedure are impracticable, unnecessary, or contrary to the public interest.

periods prior to issuing its proposed rule.[10]

## C. Notices of Probation to ABG and Centennial

On May 2, 1990, HUD sent notices to both ABG and Centennial, informing them that upon receipt of the notices, each was being placed on probation for a period of six months. One of the effects of probation was that these lenders would be prohibited from issuing firm commitments without HUD's prior written approval. Plaintiffs subsequently moved for a temporary restraining order to enjoin defendants from giving force and effect to these notices of probation. Plaintiffs advance three arguments in support of their motion. First, they maintain that HUD violated the due process clause of the Fifth Amendment by placing ABG and Centennial on probation without prior notice and opportunity for a hearing. Second, plaintiffs challenge the bases for the suspension, contending that the improprieties asserted are not current but are stale matters which are mere pretexts for HUD's retaliation against ABG and Centennial for instituting the instant lawsuit. Third, plaintiffs argue that the matters upon which the probations were based do not provide permissible bases for adverse action under the coinsurance regulations, even assuming that the regulations are constitutional. Defendants' principal argument in opposition to plaintiffs' motion is that plaintiffs must exhaust their administrative remedies with HUD prior to seeking judicial review. Arguing in the alternative, defendants contend that HUD's regulations pass constitutional muster and comport with the procedural due process requirements of the Fifth Amendment.

As previously stated in the Court's first two opinions, a temporary restraining order may be granted only when the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of a temporary restraining order. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977); *accord, Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958). Because, as reflected below, plaintiffs have failed to show a likelihood of success on the merits, their motion shall be denied.[11]

■ The Court agrees with defendants that plaintiffs must first exhaust their administrative remedies before seeking judicial review. HUD's regulations provide plaintiffs with an administrative remedy:

Coinsuring lenders will be notified in writing by the [Federal Housing] Commissioner, or designee, when a probation, suspension or withdrawal action is taken. The notice will specifically state the cause, effect, and duration of the action. Lenders must comply with the conditions of the notice immediately, but may request an informal hearing on the action within 10 working days of the receipt of the notice. The hearing shall be held by the Commissioner or designee. The lender shall be given the opportunity to be

---

**10.** Defendants advise that public comments during the initial 30 day period were receive from 17 lenders, including each of the plaintiffs of this case. Any person or entity, including those who submitted comments during the initial 30 day period, shall be permitted to submit comment during this additional 30 day period.

**11.** There is one preliminary matter that needs clarification. HUD's regulations provides for probation, temporary suspension, or withdrawal of approval as available sanctions to be imposed by HUD on coinsuring lenders. 24 C.F.R. §§ 251.104, 252.104, 255.104. However, in their motion and subsequent pleadings, plaintiffs repeatedly characterize HUD's most recent action

as placing ABG and Centennial on "suspension," despite the fact that the notices explicitly state that ABG and Centennial are being placed on "probation." Suspension and probation are not synonymous. A lender on *probation* may continue to originate and process applications for mortgage insurance and may continue to issue commitments, subject to conditions imposed by HUD, including submission of the processing to HUD before the issuance of the commitment. 24 C.F.R. § 251.104(b). A lender which is *suspended,* by contrast, no longer has approval as a coinsuring lender and may not originate additional commitments during the period of suspension.

heard within 10 days of the receipt of the request and may be represented by counsel. The Commissioner or designee will notify the lender in writing of the results of the hearing within 10 working days of the hearing and receipt of any materials. A decision to withdraw, suspend, or continue probation following a hearing constitutes final agency action.

24 C.F.R. § 251.104(c).[12]

Counsel for plaintiffs advised the Court at the May 11, 1990 hearing that plaintiffs had not requested an informal hearing, although he indicated that the time for doing so had not yet elapsed. Until such time as plaintiffs exhaust the administrative remedy and receive an unfavorable result, the issue of HUD's placement of ABG and Centennial on probation is not ripe for review by this Court.

"It is a 'long settled rule of judicial administration that no one is entitled to judicial relief for supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Peter Kiewit Sons' Co. v. U.S. Army Corps of Engineers,* 714 F.2d 163, 167 (D.C.Cir.1983) (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938) (Brandeis, J.)); *see also McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). The exhaustion requirement is waived "only in the most exceptional circumstances." *Peter Kiewit Sons' Co.,* 714 F.2d at 168–69. Our court of appeals has noted that the exhaustion requirement serves four primary purposes:

First, it carries out the congressional purpose in granting authority to the agency by discouraging the "frequent and deliberate flouting of the administrative process [that] could ... encourag[e] people to ignore its procedures." *McKart, supra,* 395 U.S. at 195, 89 S.Ct. at 1663. Second, it protects agency autonomy by allowing the agency to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors. Third, it aids judicial review by allowing the parties to develop the facts of the case in the administrative proceeding. Fourth, it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and perhaps by avoiding the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency.

*Andrade v. Lauer,* 729 F.2d 1475, 1484 (D.C.Cir.1984).

The decision to place a coinsuring lender on probation is a discretionary one. HUD's regulations provide that a coinsuring lender *may* be placed on probation for one of several enumerated reasons. *See* 24 C.F.R. §§ 251.104(a), 252.104(a), 255.104(a) (emphasis added). Requiring plaintiffs to raise their challenges with HUD in the first instance would therefore serve the purposes of the exhaustion doctrine, by giving HUD the opportunity to exercise its own discretion and correct its own errors, if it determines that any were made. It may also avoid needless judicial involvement should plaintiffs vindicate their claims before HUD.

■ Nonetheless, plaintiffs seek to bypass the administrative process completely, arguing that where an agency has violated the Constitution or its enabling legislation and is causing irreparable injury, there is no need to exhaust administrative remedies. Plaintiffs' argument is unpersuasive here. To begin with, plaintiffs raise both constitutional and nonconstitutional bases for challenging HUD's decision to place ABG and Centennial on probation.[13] In such circumstances, courts have recognized that the exhaustion requirement serves an additional purpose—it may eliminate the need to resolve constitutional questions should the agency grant relief on noncon-

---

12. 24 C.F.R. Part 251 governs the coinsured Section 221(d) mortgages program. Identical provisions are found under Parts 255 (Section 223(f) coinsurance program) and Parts 252 (section 232 coinsurance program). 24 C.F.R. §§ 255.104(c), 252.104(c).

13. Plaintiffs' nonconstitutional claims include the assertions that HUD's decision to place ABG and Centennial on probation is founded on stale improprieties and on matters that do not provide a permissible basis for probation.

stitutional grounds. *See, e.g., American Federation of Government Employees v. Nimmo,* 711 F.2d 28, 31 (4th Cir.1983); *St. Regis Paper Co. v. Marshall,* 591 F.2d 612, 614 (10th Cir.), *cert. denied,* 444 U.S. 828, 100 S.Ct. 55, 62 L.Ed.2d 36 (1979); *Montana Chapter of Ass'n of Civil Technicians, Inc. v. Young,* 514 F.2d 1165, 1167–68 (9th Cir.1975); *Wallace v. Lynn,* 507 F.2d 1186, 1190–91 (D.C.Cir.1974); *see also Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 772–73, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1947).[14]

Furthermore, requiring exhaustion will allow the agency to develop a factual record so that judicial resolution of the constitutional issue, if necessary, will not be made in a context "devoid of factual content." *See Robinson v. Dow,* 522 F.2d 855 (6th Cir.1975) (citation omitted); *see also Gaunce v. deVincentis,* 708 F.2d 1290, 1293 (7th Cir.) *(per curiam ), cert. denied,* 464 U.S. 978, 104 S.Ct. 417, 78 L.Ed.2d 354 (1983).

The strong policy concerns upon which the exhaustion requirement is based therefore command this court to defer resolution of plaintiffs' claims until they have been considered by HUD, the administrative agency which administers the coinsurance program and the regulations promulgated thereunder. None of the cases cited by plaintiffs, *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Finnerty v. Cowen,* 508 F.2d 979, 982 (2d Cir. 1974); *Nader v. Volpe,* 466 F.2d 261, 266 (D.C.Cir.1972), dictates a different conclusion.

The determination that exhaustion of administrative remedies is required is also supported by the recent decision of the Sixth Circuit in *Buckeye Terminix Company v. United States Department of Housing and Urban Development, et al.,* No. 89–3729, slip op. [900 F.2d 259 (table) ] (6th Cir. April 18, 1990).[15] There, the court held that exhaustion was required for a constitutional challenge to an administrative action by HUD under 24 C.F.R. § 24.700 *et seq.* for failure to provide a pre-deprivation hearing. *Buckeye Terminix* teaches that where the challenge is in effect to the constitutionality of an agency's regulations, as opposed to the enabling statute itself, exhaustion is required. *Id.* at 7–8. In the instant case, plaintiffs' attack is not upon the National Housing Act which created the coinsurance program; rather, plaintiffs challenge HUD's regulations which provide for a prompt post-probation hearing instead of a pre-probation hearing. Here, like *Buckeye Terminix,* "the constitutional challenge to HUD's discretionary regulations on the basis of HUD's failure to provide a pre-[probation] hearing does not fall under the exception to the exhaustion doctrine." *Id.* at 8.

Plaintiffs also rely on the "futility" exception to the exhaustion doctrine which excuses a party from exhausting its administrative remedies where resort to the administrative process would be futile. Resort to the administrative process is "futile" if "the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter." *Randolph–Shep-*

---

**14.** Although in *Aircraft & Diesel Corp.,* the Supreme Court recognized that "the presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure, has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention," 331 U.S. at 773, 67 S.Ct. at 1503–04, it cautioned that "this rule is not one of mere convenience or ready application." *Id.* Rather, "a strong showing is required, both of inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process." *Id.* at 773–74, 67 S.Ct. at 1504. In the instant case, plaintiffs have

shown neither inadequacy in the procedure prescribed by HUD's regulations nor impending harm. Even assuming that plaintiffs were to demonstrate impending harm, they would not be able to show that it flowed from a delay "incident to following the prescribed procedure," as HUD's regulations provide for a prompt post-probation hearing and decision.

**15.** A copy of this opinion is attached to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Third Motion for Temporary Restraining Order and Preliminary Injunction. It is also available at 1990 WL 47472 and 1990 U.S.App. LEXIS 6105.

*pard Vendors of America v. Weinberger,* 795 F.2d 90, 107 (D.C.Cir.1986). Stated differently,

> [w]hen an agency has committed itself not to change its rules unless judicially compelled to do so, has made known that its general views are contrary to those of the complainant, and has never given an inkling that it would consider a matter afresh, and when the regulations in question have received careful attention within and outside the agency, a complainant need not make a *pro forma* request that the agency redo its system.

*Etelson v. Office of Personnel Management,* 684 F.2d 918, 925 (D.C.Cir.1982). The court in *Etelson* noted that the futility exception "is subject to abuse." *Id.* So it is here—plaintiffs' futility claim is conclusory and unsupported by the record. Plaintiffs have offered no facts which give reason to believe that their resort to HUD's administrative procedures would be a useless exercise with absolutely no hope of success.

For these reasons, the Court finds that plaintiffs must exhaust their administrative remedies with HUD prior to seeking judicial review. Accordingly, plaintiffs have failed to demonstrate a substantial likelihood of success on the merits and their third motion for a temporary restraining order and preliminary injunction is denied.

## III.

For the reasons stated above, it is hereby

ORDERED that plaintiffs' motion for a permanent injunction with respect to Coinsuring Lender Letters Nos. 89–12, 90–1, and 90–2 is granted and the Secretary of Housing and Urban Development, the Federal Housing Commissioner, and the Deputy Federal Housing Commissioner, their officers, agents, and employees, are permanently enjoined from giving force or effect to Department of Housing and Urban Development Coinsuring Lender Letters Nos. 89–12, 90–1, or 90–2 other than by the notice and comment procedures prescribed in section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, and those procedures specified in section 7 of the Department of Housing and Urban Development Act, 42 U.S.C. § 3535(*o* ). It is

FURTHER ORDERED that plaintiffs' motion for a permanent injunction with respect to the Interim Rule published at 55 Fed.Reg. 11,342 (March 27, 1990) is granted in part and denied in part and defendants' emergency motion for clarification of this Court's April 25, 1990 Memorandum Opinion is granted in accordance with the following ruling: Defendants shall publish a new notice, as a proposed rule, that extends the public comment period by 30 days, must allow any person or entity, including those who have previously submitted comments, to submit comments during that period, shall then consider all comments received during both periods, and then publish the rule in final form to take effect 30 days thereafter, in accordance with 42 U.S.C. § 3535(*o* ). Until such time as defendants satisfy these conditions, the Secretary of Housing and Urban Development, the Federal Housing Commissioner, and the Deputy Federal Housing Commissioner, their officers, agents, and employees, are hereby enjoined from giving force or effect to the Interim Rule published at 55 Fed.Reg. 11,342 (March 27, 1990). It is

FURTHER ORDERED that plaintiffs' third motion for a temporary restraining order and third motion for a preliminary injunction are denied for failure to exhaust administrative remedies.

Accordingly, this case stands dismissed.

Should these rulings be appealed, no stay is warranted for the reasons cited in this Memorandum Opinion.