VARICON INTERNATIONAL,
et al., Plaintiffs,

v.

OFFICE OF PERSONNEL
MANAGEMENT, et
al., Defendants.

Civil Action No. 96–1124 RMU.

United States District Court,
District of Columbia.

July 8, 1996.

Richard Donald Lieberman, John Randolph MacPherson, Sullivan & Worcester, Washington, DC, James Scott Phillips, Arlington, VA, for Varicon International, Inc., MVM, Inc.

Rudolph Contreras, U.S. Attorney's Office, Washington, DC, for Office of Personnel Management, James B. King.

### MEMORANDUM OPINION

URBINA, District Judge.

#### Denying Plaintiffs' Motion for a Preliminary Injunction

This matter comes before the court upon plaintiffs' motion for a preliminary injunction; defendants' opposition; and plaintiffs' reply. The court concludes that plaintiffs' motion shall be denied because plaintiffs have failed to demonstrate that they have a substantial likelihood of success on the merits; that they will be irreparably harmed; that the balance of harms favors the issuance of an injunction; or that the public interest will be furthered if the court were to grant injunctive relief.

### BACKGROUND

The Investigations Service of the Office of Personnel Management ("OPM") is responsi-

ble for conducting background investigations of executive branch applicants and employees for security clearance purposes. In 1994, OPM conducted thirty-eight percent of the total personnel background investigations undertaken that year. Most of the remaining investigations were conducted by the particular executive agency making the personnel decision, pursuant to delegation agreements with OPM or the agency's independent statutory authority. Approximately five point seven percent of the investigations in 1994 were contracted out to private investigation services, including plaintiffs in this action.

In December 1994, OPM began developing plans to privatize its Investigation Service. By June 1995, OPM had implemented a privatization plan whereby an employee-owned company was created with which OPM would contract to perform the background investigations previously performed by the Investigations Service of OPM. As part of the privatization plan, the new company, U.S. Investigations Services ("USIS"), was to offer employment to all OPM personnel who would be displaced by the privatization plan.

On September 18, 1995, OPM Director James B. King issued a Determination and Finding ("D & F"), which determined that it was in the "public interest" to award, without full and open competition, an exclusive procurement contract for investigative and related services to USIS for a period of three years, with two additional one-year options. This D & F was issued pursuant to 41 U.S.C. § 253(c)(7) and § 6.301–7 of the Federal Acquisition Regulations.

On April 12, 1996, OPM signed an exclusive procurement contract with USIS. On May 1, 1996, OPM issued reduction in force notices to approximately 700 of its Investigations Service employees, notifying them of discharge effective July 6, 1996.

On May 2, 1996, pursuant to its contract with OPM, USIS extended written job offers to each OPM Investigations Service employee who had received a reduction in force notice. Over ninety percent of the outgoing OPM employees accepted USIS's employment offer. OPM plans to issue a notice to proceed under its contract with USIS to be effective July 7, 1996.

Plaintiffs Varicon International, Inc. ("Varicon") and MVM, Inc. ("MVM") are both corporations which provide various security services, including background investigations, to the United States government and the private sector. The plaintiffs have filed a motion for preliminary injunction to enjoin OPM from proceeding on its contract with USIS.

**ANALYSIS**

In order to succeed on a motion for a preliminary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) that the public interest favors entry of a preliminary injunction. *WMATC v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977); *Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir. 1989). A preliminary injunction is not granted as a matter of right. *Eli Lilly and Co. v. Premo Pharmaceutical Labs.*, 630 F.2d 120, 136 (3d Cir.1980), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). Injunctive relief is an extraordinary remedy and must be sparingly granted. *Dorfmann v. Boozer,* 414 F.2d 1168 (D.C.Cir.1969).

A district court is to balance the four factors. *Grigsby Brandford & Co., Inc. v. U.S.,* 869 F.Supp. 984, 1003 (D.D.C.1994). Consequently, although a "particularly strong likelihood of success on the merits" may entitle a movant to relief upon "a relatively slight showing of irreparable injury," some showing of irreparable injury is always required, "since 'the basis for injunctive relief in the federal courts has always been irreparable harm.'" *CityFed Fin. Corp. v. OTS,* 58 F.3d 738, 747 (D.C.Cir.1995) (*quoting Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974)). Likewise, a court may accept a showing that the movant has a "substantial case on the merits" instead of the probability of success on the merits that is ordinarily required, but only when all of "the other three factors strongly favor interim relief." *Holiday Tours, Inc.,* 559 F.2d at 843.

## I. Likelihood of Success on the Merits

■ The court determines that the plaintiffs have failed to demonstrate a likelihood of success on the merits of their claim that the OPM's decision to issue a sole source contract to USIS is arbitrary, capricious or contrary to law for two reasons. First, the plaintiffs have not demonstrated a likelihood of success in proving that the OPM Director's decision is subject to judicial review. Second, assuming the Director's decision is reviewable by this court, the plaintiffs have not demonstrated a likelihood of success in showing that the Director's decision lacks a reasonable basis or that it is not in accordance with applicable law. The court further determines that Executive Order 10450 appears to provide the necessary legal basis for OPM's regulations that require agencies to obtain authority from it in order to perform or contract for the completion of background investigations, and therefore, the plaintiffs have failed to demonstrate a likelihood of success on this issue. Finally, the court concludes that the plaintiffs have failed to demonstrate a likelihood of success in showing that the USIS was established in violation of the Government Corporation Act.

### A. *OPM's Decision to Issue a Sole Source Contract to USIS*

#### 1. *Reviewability of the Director of OPM's Decision under the Administrative Procedure Act*

"The [Administrative Procedure Act] establishes a 'presumption of judicial review' at the behest of those adversely affected by agency action." *Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1513 (D.C.Cir.1989) (*citing, Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)). One exception to the presumption of judicial reviewability is if the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Supreme Court has noted that "under § 701(a)(2), even when Congress has not affirmatively precluded judicial oversight, 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " *Webster v. Doe,* 486 U.S. 592, 599–600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988) (*citing Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985)).

Both the Competition in Contracting Act of 1984 ("CICA") and the Federal Acquisition Regulation ("FAR") provide that the head of an executive agency may use procurement procedures other than competitive procedures if the head of the agency "determines that it is necessary in the public interest to use procedures other than competitive procedures in the particular procurement concerned." 41 U.S.C. § 253(c)(7); FAR 6.302–7. This provision is commonly known as the "public interest exception." The defendants argue that the public interest exception provides the Director of OPM with absolute discretion to award a procurement contract on a non-competitive basis if he determines it to be in the public's best interest. The defendants further contend that as the statute provides no standards against which the court may judge whether the Director of OPM properly determined that "it is necessary in the public interest," his decision to award USIS a sole source contract is not subject to judicial review.

In *Webster v. Doe,* the Supreme Court determined that the statutory provision authorizing the Director of the Central Intelligence Agency to terminate an agency employee whenever he "shall deem such termination necessary or advisable in the interests of the United States" grants the Director unreviewable discretion. *Webster,* 486 U.S. at 600, 108 S.Ct. at 2052 (interpreting 50 U.S.C. § 403(c)). In reaching its conclusion, the Court noted that the statutory provision allowed for termination of an employee whenever the Director "shall *deem* such termination necessary ... not simply when the dismissal is necessary or advisable to those interests." *Webster,* 486 U.S. at 600, 108 S.Ct. at 2052 (emphasis added). The court finds the language in the public interest exception to be linguistically similar to the language in the statutory provision examined by the Supreme Court in *Webster v. Doe.*

As in *Webster*, the statutory provision at issue here "fairly exudes deference" to the Director of OPM. *Webster*, 486 U.S. at 600, 108 S.Ct. at 2052. The public interest exception allows the Director of OPM to award a contract on a non-competitive basis if he "*determines* that it is necessary in the public interest." The statute provides no objective criteria by which the court can asses whether the awarding of sole source contract is in the public's interest; instead it leaves this decision to the Director's discretion. *See also, Acumenics Research & Technology*, B–224702, Aug. 5, 1987, 87–2, CPD ¶ 128 (addressing the reviewability of [the public interest exception] and concluding that "public interest" determinations by the head of an executive agency "are matters of discretion vested in his or her office and not subject to question by [Comptroller General's Office]").[1]

The statutory language contained in the public interest exception is almost identical to the language found to be unreviewable by the Court in *Webster*. Accordingly, the language of the public interest exception strongly suggests that the decision to award a sole source contract, if the OPM Director determines it is in the public's best interest, was "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As such the plaintiffs have failed to demonstrate a likelihood of success on the merits in regard to this issue.

### 2. *Review of the Agency Decision*

Even assuming *arguendo* that Director's decision is reviewable, the court concludes that the plaintiffs have failed to demonstrate a likelihood of success on their argument that the Director's decision is not rationally based.

▮▮▮▮ Plaintiffs' attack on OPM's decision to award USIS a sole source contract proceeds under the Administrative Proce-

dures Act which provides that a court shall not set aside an agency action, findings, or conclusions, unless the same are found by the court "to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." 5 U.S.C. § 706(2)(A). Under this standard, "there is a presumption in favor of the validity of administrative action." *Ethicon, Inc. v. FDA*, 762 F.Supp. 382, 386 (D.D.C.1991). A reviewing court "must consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Moreover, under this narrow scope of review, "[t]he court is not empowered to substitute its judgment for that of the agency." *Id.*

▮▮▮▮ As the plaintiffs complain that they should have been allowed to compete for a government contract, plaintiff's position in this action is analogous to that of a disappointed bidder. *See, Information Resources, Inc. v. United States*, 676 F.Supp. 293, 297 (D.D.C.1987). In order to prevail in this form of action, a losing bidder must demonstrate that an agency's decision "on matters committed primarily to [its] own discretion had no rational basis or [that] the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron–Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973) (footnotes omitted). So long as there is a reasonable basis for an agency's action in matters involving procurement, "the court should stay its hand, even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1303 (D.C.Cir.1971).

---

1. In support of its position that the Director's decision to use the "public interest" exception is reviewable by this court, the plaintiff cites to an opinion from the General Accounting Office, *Zubin Delaware, Inc.*, B–227003, Aug. 11, 1987 87–2 CPD ¶ 149. The *Zubin* decision provides little guidance on this issue. While the General Accounting Office did review a decision of the Secretary of the Navy to employ the public interest exception at issue in this case, the issue of re-

viewability itself was neither raised nor addressed in *Zubin*. *See, Ticor Title Insur. Co. v. Federal Trade Comm'n*, 814 F.2d 731, 749 ("[I]t is well settled that cases in which jurisdiction is assumed *sub silentio* are not binding authority for the proposition that jurisdiction exists.") (*citing Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984)).

The plaintiffs argue that OPM's decision to award a five year sole source contract to USIS is arbitrary because it has no rational basis; that the D & F violates FAR 6.303–2 by not containing sufficient justifications for the decision; and that the defendants have failed to comply with the notice requirements of FAR 5.201. Upon review of the record submitted by the parties at this juncture, the court determines that the plaintiffs have not currently demonstrated that OPM's decision lacked a rational basis or involved a "clear and prejudicial violation of applicable statutes or regulations." *Kentron–Hawaii, Ltd.,* 480 F.2d at 1169.

The plaintiffs initially argue that the Director's decision is arbitrary because his decision is predicated on the Feasibility Study in Support of the OPM Investigations Privatization Program ("feasibility study"). The plaintiffs contend that the reasoning contained in the feasibility study is flawed, irrational and arbitrary. Since the D & F was based on the feasibility study, the plaintiffs contend that it must also be deemed by the court to be irrational, arbitrary and capricious. While the plaintiffs identify conclusions in the feasibility study with which they disagree, they have failed to demonstrate that the methodology used, the analysis, or the reasoning contained in the study was either flawed or irrational.

Plaintiffs also contend that the Director's decision is irrational because the investigatory functions to be provided by USIS, can be obtained at a lower cost from other private contractors. Given the deference to be afforded an agency's procurement decision, the fact that the contract did not go to another private contractor which could provide comparable services at a lower price does not demonstrate that the decision is irrational or lacks a rational basis. *See, Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 204 (D.C.Cir.1984).

The court observes that the D & F itself demonstrates that the Director did not make his decision in a vacuum. In his D & F the Director states that other privatization options were considered; that privatization of the OPM Investigation Services was the best option for a number of reasons articulated in the D & F [2]; and that privatization of the OPM Investigation Services would only be feasible if it were to be awarded a contract on a sole source basis. Accordingly, the plaintiffs have failed to demonstrate a likelihood of success in persuading the court that the Director's decision to award a sole source contract to USIS had no rational basis.

The plaintiffs further argue that the D & F is insufficient because it does not comply with the requirements established in FAR 6.303–2. FAR 6.303–2 requires, among other things, a determination that the anticipated costs be fair and reasonable and a description of the market research conducted and the results or a statement of the reason the market research was not conducted. FAR 6.303–2(a)(7) & (8). Written justifications pursuant to FAR 6.303 are only necessary, however, if they are required in FAR 6.302. FAR 6.303–1(a)(1). While the other six exemptions which allow an agency to use procedures other than competitive procedures require compliance with FAR 6.303, the public interest exception does not. *See,* FAR 6.302–1(d)(1); FAR 6.302–2(c)(1); FAR 6.302–3(c); FAR 6.302–4(c); FAR 6.302–5(c)(2); FAR 6.302–6(c)(1). The public interest exception instead requires a written determination "made in accordance with Subpart 1.7." FAR 6.302–7(c). The D & F has addressed all of the items required in FAR 1.704. Accordingly, the plaintiffs have not demonstrated that the D & F is legally insufficient.

Finally, the plaintiffs argue that the defendants have failed to comply with the notice requirements of FAR 5.201. FAR 5.201 generally requires that agencies provide advance

---

**2.** Factors the Director considered included: OPM's need to have background investigations continue uninterrupted; assuring OPM customer agencies, which had expressed uncertainty regarding whether private sector resources were available to provide the same quality of services provided by OPM, that they will continue to receive the same high quality of service, only through a private vendor; and that during this period of downsizing, USIS will provide an employment option to employees from the Investigatory Services Division, consistent with OPM's out placement goals.

notice in the Commerce Business Daily ("CBD") prior to awarding a contract. FAR 5.202 explicitly that "the contracting officer need not submit the notice required by 5.201 [CBD notice of proposed contract] when— (10) The contract is made under conditions described . . . in 6.302.7, and advance notice is not reasonable." FAR 5.502(10). On September 26, 1995, contracting officer Raymond D. Hesson, issued a D & F in which he explained that advance notice was not reasonable because the agency had determined to award the contract to a single company.[3] Moreover, as OPM had determined that issuance of the contract to USIS on a noncompetitive basis was in the public interest, the plaintiffs have not shown how they were prejudiced by the lack of a published notice in the CBD.

## B. The Office of Personnel Management's Regulation that Agencies Must Obtain Authority from it in Order to Perform or Contract Out Background Investigations

Plaintiffs argue that the OPM regulation which provides that "[u]nless provided otherwise by law, the investigation of persons entering or employed in the competitive service . . . is the responsibility of OPM" has no legal basis, and therefore are arbitrary and capricious. 5 C.F.R. § 736.201(a). Executive Order 10450, however, appears to provide the necessary legal basis for the regulations.

The authority to conduct background investigations is vested in the President of the United States pursuant to 5 U.S.C. § 3301. Section 3301 provides the President of the United States with the authority to "ascertain the fitness of applicants as to age, health, character, knowledge, and ability for the employment sought," and to "appoint and proscribe the duties of individuals to make inquires for the purpose of this section." 5 U.S.C. § 3301(2), (3). The President's authority was delegated to the Civil Service Commission, now the Office of Personnel Management, pursuant to Executive Order 10450. Section 8(b) of Executive Order 10450 provides that the "investigation of persons entering or employed in the competitive service shall primarily be the responsibility of the [OPM], except in cases in which the head of the department or agency assumes that responsibility pursuant to law or by agreement with [OPM]." A plain reading of Executive Order 10450 suggests that the only instances when OPM is not responsible for background investigations is when a federal agency has independent authority under a separate statute or when OPM enters into an agreement with an agency to delegate its authority. Accordingly, the plaintiffs have failed to demonstrate a likelihood of success on the merits, as Executive Order 10450 appears to provide OPM with the necessary authority to promulgate the regulations found at 5 C.F.R. § 736.201.[4]

## C. OPM's Establishment of USIS

Plaintiffs argue that OPM violated the Government Corporation Act when it created USIS. The Government Corporation Act permits agencies to establish "a corporation to act as an agency only by or under a law of the United States specifically authorizing the action." 31 U.S.C. § 9102. It is the plaintiffs position that USIS was established to "act as an agency." As there is no statute authorizing the creation of USIS, the plaintiffs contend that USIS was established in violation of applicable law.

The court concludes that the plaintiffs have failed to demonstrate a likelihood of success in proving that USIS was established to "act as an agency." In support of its position the plaintiffs cite *Lebron v. National Railroad*

---

**3.** Specifically, in paragraph 4 of the D & F, as amended, Mr. Hesson explains,

It is the policy of the Government, under FAR, part 5, to publicize procurements in order to increase competition, broaden industry participation in meeting the Government's requirements and assist small businesses, 8(a) businesses and labor surplus area concerns. However, because publication of this procurement in the Commerce Business Daily (CBD) would not further the promotion of these policies.

**4.** The court expects the defendants to address the issue of why Executive Order 10450 is not listed in the Code of Federal Regulations as a source of authority for the regulation in their dispositive motion.

*Passenger Corp.,* —— U.S. ——, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995). In *Lebron,* the Supreme Court determined that the National Railroad Passenger Corporation ("Amtrak") was an agency or instrumentality of the United States for purposes of individual rights guaranteed by the Constitution. In determining that Amtrak was an agency of the government, the Supreme Court considered that six of nine Amtrak board members are appointed by the President; the United States holds all of Amtrak's preferred stock; the United States subsidizes Amtrak's perennial financial losses; Amtrak is required to submit annual reports to the President and Congress; and Amtrak is established and organized under federal law for the very purpose of pursuing federal government objectives under the direction and control of federal government appointees. *Lebron,* —— U.S. at ——–——, 115 S.Ct. at 967–974. The record currently before the court indicates that USIS is a private company owned by its employees, through the ESOP; none of the USIS employees will be employed in any manner or in any capacity by the government; the government will have no control over the USIS board of directors, management, or employees, except as provided for in the contract; the government will not own or have any rights or obligations to own any USIS stock; the government will have no right or ability to appoint members of the USIS board of directors; and, the government has no obligation to or intention to make payments to or otherwise financially assist USIS except as provided under the contract in payment for service performed under the contract. Based on the record and evidence before the court at this juncture, it is the court's conclusion that USIS appears to be a private corporation which was awarded a government contract, and not a corporation which is acting as a federal agency.

## II. Irreparable Harm

■■■ "Irreparability of injury is a very high standard." *American Coastal Line Joint Venture, Inc. v. United States Lines, Inc.,* 580 F.Supp. 932, 936 (D.D.C.1983). In order to establish irreparable injury justifying preliminary relief, the plaintiffs must show that the injury is certain, great, and actual, not theoretical; injury must be imminent, creating a clear and present need for equitable relief to prevent harm. *Housing Study Group v. Kemp,* 736 F.Supp. 321, *order clarified* 739 F.Supp. 633 (D.D.C.1990). Plaintiffs irreparable harm argument is premised on economic harm they will allegedly suffer absent injunctive relief and to their right to participate in a legally valid procurement process.

### 1. *Economic Harm*

■■■ "It is well ... settled that economic loss does not, in and of itself constitute irreparable harm." *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985). "Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Id.* Moreover, the movant must "provide proof ... indicating that the harm is certain to occur in the near future" and that "the alleged harm will directly result from the action which the movant seeks to enjoin." *Id.*

The irreparable harm alleged by both plaintiffs is based on the assumption that OPM will refuse to delegate authority to agencies to contract for background investigations. However, Richard A. Ferris, OPM's current Acting Associate Director for Investigatory Services, states that he does not "intend to cancel or fail to renew any such existing delegations of authority to agencies to perform or contract for background investigations in order to support the workload of [USIS], or for any other purpose." Ferris Affidavit at ¶ 11.

On March 18, 1996, plaintiff MVM was awarded a five year contract to conduct background investigations for the United States Customs Services. While performance of this contract has been stayed pending the resolution of a protest at the General Accounting Office, MVM estimates that this contract will account for ten percent or more of its revenues in 1996. MVM contends that it will be irreparably harmed if OPM eliminates this contract and awards it to USIS. MVM has presented no evidence which indicates that OPM will not delegate the necessary authority to the United States Customs

Service to allow it to contract with MVM to perform background investigations. Further, even if MVM were to lose the contract to USIS a ten percent decrease in revenues would not threaten MVM's existence.[5]

Plaintiff Varicon currently has a contract to conduct background investigations for the Drug Enforcement Agency. This contract is scheduled to end on September 30, 1996. Varicon's contract with the Drug Enforcement Agency accounts for approximately eighty percent of Varicon's business. Varicon avers that if this work is eliminated it will likely go out of business. Varicon, however, has presented no evidence that OPM will not renew its delegation of authority to the Drug Enforcement Agency to contract for background investigations.

As the plaintiffs have failed to provide proof which indicates that they are certain to suffer substantial economic harm in the near future as the result of the defendants' actions, they have failed to demonstrate irreparable economic harm.

### 2. *Non–Economic Harm*

■ "A disappointed bidder that claims illegality in a procurement alleges an injury beyond its economic loss of the contract. The disappointed bidder may also claim injury to its right to a legally valid procurement process. This right is implicitly bestowed on all bidders by the mandatory language of the federal procurement statutes ... and by the contractual invitation to bid embodied in the solicitation." *National Maritime Union of America v. Commander, MSC*, 824 F.2d 1228, 1237 (D.C.Cir.1987) (citations omitted). Plaintiffs argue they have been deprived of a legally valid procurement process and have thus suffered an irreparable injury. The court rejects this argument in view of the fact that plaintiffs have failed to persuade the court that they have presented a substantial case on the merits on their claim that the procurement process was le-

gally invalid. *See e.g., O'Donnell Construction Company v. District of Columbia*, 963 F.2d 420 (D.C.Cir.1992) (finding irreparable harm present in disappointed bidder action after determining plaintiff had demonstrated a strong showing that it was likely to prevail on the merits).

### III. Balance of Harms

The defendants argue that the former OPM employees whose reduction in force notices become effective on July 6, 1996, and are to begin working for USIS when it proceeds on the contract on July 7, 1996 would be significantly harmed by the granting of an injunction. The plaintiffs contend that OPM has the power to cancel or stay the reduction in force notices, thereby eliminating any harm to third parties. Based on the evidence before the court at this juncture, the court is unable to determine if staying or canceling the reduction in force notices and the continuation of the Investigations Services Division of OPM is, logistically, a viable option at this late date. Accordingly, the court does not resolve this factor in favor of the plaintiffs.

### IV. Public Interest

The plaintiffs contend that granting the injunctive relief sought would be in the public interest for two reasons. First, an injunction would serve the public interest by ensuring that the government's procurement of goods and services is done in a fair and legal fashion. Second, granting the injunction will prevent OPM from paying higher prices for investigatory services to USIS than it would have to pay if it awarded the contract on a competitive basis. The defendants argue that granting the injunction will result in a significant delay in the completion of background investigations for over one hundred federal entities.[6] Ferris Affidavit at ¶ 16. As the court is not persuaded that the plain-

---

5. *Arrow Air, Inc. v. United States*, 649 F.Supp. 993 (D.D.C.1986) (loss of twenty-five percent of gross revenue insufficient to establish irreparable harm); *Mead Johnson Pharm. Group v. Bowen*, 655 F.Supp. 53 (D.D.C.1986) (loss of twenty to thirty percent of company's market does not adequately demonstrate irreparable harm).

6. The defendants state that a delay of even one-month will create a backlog of about 3,400 background and 20,000 lesser investigations. Ferris Affidavit at ¶ 16.

tiffs will be successful on the merits of their claims, it does not find that the granting of an injunction at this time would be in the best interest of the public.

Therefore, in accordance with this courts' order of June 28, 1996, plaintiffs' motion for a preliminary injunction be and is hereby **denied.**