# Status of National Veterans Business Development Corporation

The National Veterans Business Development Corporation is a "Government corporation" under 5 U.S.C. § 103 and an "agency" under 31 U.S.C. § 9102.

March 19, 2004

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF MANAGEMENT AND BUDGET

You have asked for our opinion whether the National Veterans Business Development Corporation ("NVBDC") is a "Government corporation" under 5 U.S.C. § 103 (2000) and an "agency" under 31 U.S.C. § 9102 (2000). We conclude that the NVBDC comes within both statutory terms.

## I.

The Veterans Entrepreneurship and Small Business Development Act of 1999, Pub. L. No. 106-50, 113 Stat. 233, established the NVBDC as a federally chartered corporation and provided for it to be incorporated under the laws of the District of Columbia. 15 U.S.C. § 657c(a) (2000). The NVBDC is "to expand the provision of and improve access to technical assistance regarding entrepreneurship for the Nation's veterans" and "to assist veterans . . . with the formation and expansion of small business concerns by working with and organizing public and private resources." *Id.* § 657c(b). To carry out these purposes, the NVBDC is, among other things, to set up and maintain a network of information and assistance centers, *id.* § 657c(f), and create a "Professional Certification Advisory Board" that will devise uniform guidelines and standards for the professional certification of members of the armed services, aiding in their transition to civilian occupations and professions. *Id.* § 657c(j)(1).

The NVBDC is governed by a board of directors consisting of nine voting members and three non-voting ex officio members. *Id.* § 657c(c)(1). The voting members, not more than five of whom may be members of the same political party, are appointed by the President, after recommendations by certain members of Congress. *Id.* § 657c(c)(2). Except for some of the members first appointed, the voting members are appointed for a term of six years. *Id.* § 657c(c)(6). A voting member may not be "an officer or employee of the United States while serving as a member of the Board of Directors or [have been an officer or employee of the United States] during the 2-year period preceding such service." *Id.* § 657c(c)(8). The non-voting members are the Administrator of the Small Business Administration, the Secretary of Defense, and the Secretary of Veterans Affairs. *Id.* § 657c(c)(3). The voting members elect from among themselves a chairperson of the Board of Directors to serve a term of two years. *Id.* § 657c(c)(5).

Congress authorized appropriations for the NVBDC for the first four years of its existence, *see id.* § 657c(k)(1), but the NVBDC may also obtain funds from sources other than the federal government. Under the Veterans Entrepreneurship Act and a subsequent appropriations bill, Consolidated Appropriations Act, 2001, Pub. L. No. 106-554, 114 Stat. 2763 (2000), Congress established certain matching requirements so that the annual amount made available to the NVBDC from the federal government will vary according to the NVBDC's ability to secure non-federal funding. 15 U.S.C. § 657c(k)(2). The Board of Directors must "deposit all funds of the Corporation in federally chartered and insured depository institutions" until the funds are spent, *id.* § 657c(e)(1), and the statute specifies the procedures by which expenditures are to be approved, *e.g., id.* § 657c(e)(2)(A). The NVBDC is to institute a plan for raising private funds and becoming a self-sustaining corporation. *Id.* § 657c(k)(3). It must report annually to the President and Congress on its "activities and accomplishments . . . for the preceding year" and on "the efforts of Federal, State and private organizations to assist veterans in the formation and expansion of small business concerns." *Id.* § 657c(g). The NVBDC, finally, "may use the United States mails in the same manner and under the same conditions as the departments and agencies of the United States." *Id.* § 657c(i).

At issue here is the status of the NVBDC under title 5, United States Code. The Office of Management and Budget ("OMB") and the Office of Personnel Management ("OPM") have concluded that the NVBDC is a "Government corporation" under 5 U.S.C. § 103 and thus is an "Executive agency" under 5 U.S.C. § 105 (2000). *See* Letter for Yvette M. Dennis, Program Examiner, OMB, from Charles R. Henry, President and Chief Executive Officer, NVBDC (May 19, 2003) (summarizing and replying to OMB position) ("Henry Letter"); Letter for Phyllis Thompson, from James F. Hicks, Assistant General Counsel, OPM (Nov. 13, 2001). Private law firms retained by the NVBDC have given the contrary opinion. Memorandum for Charles Henry, President and Chief Executive Officer, NVBDC, from James J. McCullough, et al., Fried, Frank, Harris, Shriver & Jacobson, *Re: Applicability of 5 U.S.C. § 5373 Pay Cap to the National Veterans Business Development Corporation* (Dec. 5, 2001); Memorandum for Robert Glassman, from Jay P. Urwitz, Hale and Dorr, *Re: Authority of Corporation to Hold Closed Directors' Meeting* (June 11, 2001); *see also* Memorandum for Martin Berkowitz, Chief Financial Officer, NVBDC, from Jay Urwitz, Hale and Dorr, *Re: Inapplicability of FAR to NVBDC Procurement* (Apr. 15, 2002). Also in question is whether the NVBDC is an agency under 31 U.S.C. § 9102, which forbids an "agency" from creating a corporation to act as an agency unless authorized under a law. This issue is not specifically discussed in the papers that have been provided to us.

## II.

Under 5 U.S.C. § 103, "'Government corporation' means a corporation owned or controlled by the Government of the United States."[1] Whether the NVBDC is a "Government corporation" would affect whether certain personnel laws would apply to the NVBDC.

Apart from the present dispute whether the NVBDC is a "Government corporation" under this statute, there can be little doubt that it is part of the United States government for purposes of the Constitution. In *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 400 (1995), the Supreme Court held that "where, as [in the case of Amtrak], the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment." Although *Lebron* dealt with a claim under the First Amendment, the Court's decision about the constitutional status of such a corporation cannot be confined to that particular context. As we have previously concluded, "we can conceive of no principled basis for distinguishing between the status of a federal entity vis-a-vis constitutional obligations relating to individual rights and vis-a-vis the structural obligations that the Constitution imposes on federal entities." *The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 148 n.70 (1996) (citation omitted). Like Amtrak, the NVBDC was created by special law to further governmental objectives, and the President appoints not just the majority, but the entirety, of the Board of Directors.[2] Like Amtrak, therefore, the NVBDC is part of the United States government for constitutional purposes.

With respect to Amtrak, Congress had expressly provided that the corporation was "not . . . an agency . . . or establishment of the United States Government." 45 U.S.C. § 541 (1988) (repealed). This provision, the Supreme Court declared, was "assuredly dispositive of Amtrak's status as a Government entity for purposes of matters that are within Congress's control—for example, whether it is subject to statutes that impose obligations or confer powers upon Government entities, such as the Administrative Procedure Act, and the laws governing Government procurement." 513 U.S. at 392 (citations omitted). Here, there is no such express disclaimer. This silence raises the question whether the NVBDC should be treated as outside the government for statutory purposes under title 5.

---

[1] A "'Government controlled corporation' does not include a corporation owned by the Government of the United States." *Id.* § 103(2). In other words, title 5 clarifies that a corporation that would fall under the category "corporation owned by the Government of the United States" would not also fall under the category "Government controlled corporation." The statute does not further define these terms.

[2] The non-voting ex officio members have been appointed to their underlying offices by the President. 15 U.S.C. § 657c(c)(3).

A corporation that is within the United States government for the purposes of our fundamental law is, in the ordinary sense of the word, a "Government corporation"—the phrase used in title 5. Although the opinion in *Lebron* does not state that, if a corporation is part of the United States government for constitutional purposes, it must also be considered an agency of the United States unless Congress (as in the case of Amtrak) expressly provides otherwise, we believe that when Congress has created a corporation after the decision in *Lebron*—as it has here—and, through the corporation's structure and purpose, has placed it within the government for constitutional purposes, there is a strong presumption that the corporation is also part of the government for purposes of title 5, which deals with the internal organization of federal government agencies. "We may presume 'that our elected representatives, like other citizens, know the law . . . .'" *Dir., Ofc. of Workers' Comp. Progs. v. Perini North River Assocs.*, 459 U.S. 297, 319 (1983) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979)). *See also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 117 (2002) ("Congress being presumed to have known of this settled judicial treatment"). It is anomalous for a corporation to be part of the government under the Constitution, but not to be a "Government corporation" under statute; and it is reasonable to expect that, where such an anomaly is to be created, Congress would convey its intent to do so by an express statement or, perhaps, by clear implication.[3]

Here, the statute, far from making such an express statement or raising such a clear implication, exhibits additional features suggesting that, even apart from the characteristics on which *Lebron* relied, the NVBDC is owned or controlled by the United States government.[4] The NVBDC receives federal appropriations, *cf. Irwin*,

---

[3] In view of *Lebron*, the statutory status of corporations like the NVBDC cannot be dictated by the treatment of entities that Congress did not create "by special law, for the furtherance of governmental objectives," *see Forsham v. Harris*, 445 U.S. 169 (1980) (privately formed entity, University Group Diabetes Program); *Gilmore v. Dep't of Energy*, 4 F. Supp. 2d 912 (N.D. Cal. 1998) (Sandia Laboratories not created by act of Congress); *cf. United States v. Orleans*, 425 U.S. 807, 816 (1976) (employees of federal contractors not covered by Federal Tort Claims Act), or of entities a majority of whose directors are not appointed by the government, *see Irwin Mem'l Blood Bank of San Fran. Med. Soc'y v. Am. Nat'l Red Cross*, 640 F.2d 1051 (9th Cir. 1981) (analyzing Red Cross, a majority of whose board members are not appointed by the government); *cf. Pearl v. United States*, 230 F.2d 243 (10th Cir. 1956) (court finds that the Civil Air Patrol ("CAP") is not part of the United States government for the Federal Tort Claims Act; at the time of the decision, although not mentioned by the court, the CAP Board was self-perpetuating and not appointed by the government (*see* 60 Stat. 346 (1946)). Similarly, the status of the NVBDC cannot be determined by the treatment of those entities that have specifically been identified in statute as not being agencies of the United States. *See Ralis v. RFE/RL, Inc.*, 770 F.2d 1121 (D.C. Cir. 1985) (statute says that Radio Free Europe is not an agency of the United States).

[4] The cases from courts of appeals cited in the text relate to the definition in title 5 that applies to the Freedom of Information Act, 5 U.S.C. § 552(f)(1) (2000) ("FOIA"). There, the definition of "agency" reaches "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *Id.* The terms "Government corporation" and "Government controlled corporation" are defined at 5 U.S.C. § 103 "[f]or the purpose

640 F.2d at 1056 (Red Cross receives no federal appropriations), and is federally chartered, *see Rocap v. Indiek*, 539 F.2d 174, 180 (D.C. Cir. 1976) (federal charter is one indicator of federal control). It must file an annual report with Congress, "describing [among other things] the activities and accomplishments of the [NVBDC] for the preceding year." 15 U.S.C. § 657c(g); *see Rocap*, 539 F.2d at 180 n.12 (requirement of annual report to Congress is one indicator of federal control). Congress also has regulated various aspects of the NVBDC's day-to-day fiscal operations. Congress has specified where the NVBDC may deposit its funds. 15 U.S.C. § 657c(e)(1). Laying out procedures that must take place before those funds may be spent, Congress has required that expenditures be for "purposes that are . . . approved by the Board of Directors by a recorded vote with a quorum present," *id.* § 657c(e)(2)(A); has limited the Board to the purposes set forth in the statute, *id.* § 657c(e)(2)(B); and has specified that a quorum consists of five voting members, *id.* § 657c(c)(11).[5] The NVBDC is specifically allowed to solicit and receive funds from private and governmental sources, *id.* § 657c(d)(8), and "[t]o accept voluntary and uncompensated services," *id.* § 657c(d)(10)—permissions that may be designed to overcome the usual rules of appropriations law forbidding federal government agencies from augmenting their appropriations, *see Payment of Expenses Associated with Travel by the President and Vice President*, 6 Op. O.L.C. 214, 216 (1982); *see also* General Accounting Office, *Principles of Federal Appropriations Law* 6-103 (2d ed. 1992). Finally, the NVBDC's purposes specifically include assisting veterans in dealing with federal agencies, including particularly the three agencies (the Small Business Administration, the Department of Defense, and the Department of Veterans Affairs) whose heads are non-voting ex officio members of the Board of Directors and thus in a position to influence how the NVBDC carries out its responsibilities. 15 U.S.C. § 657c(b)(2), (c)(3); *see id.* § 657c(c)(1) (NVBDC's management is "vested in a Board of Directors composed of nine voting members and three nonvoting ex officio members").

Perhaps the strongest textual argument on the other side is that the NVBDC "may use the United States mails in the same manner and under the same conditions as the departments and agencies of the United States." 15 U.S.C. § 657c(i). A "Government corporation" under 5 U.S.C. § 103 is also a "Executive agency" under 5 U.S.C. § 105, and the statutory formulation about use of the mails, by not referring to "the *other* departments and agencies of the United States," could be read to suggest that the NVBDC is not such an "agenc[y]" and thus not a "Government corporation." This argument, however, cannot carry much weight. Although statutes applicable to "Executive agencies" typically would use the "other departments and agencies of the United States" language, it is not unprece-

---

of this title," and the understanding of those terms reflected in the FOIA cases is therefore relevant to the present question.

[5] It is left to the directors to "prescribe the manner in which the obligations of the [NVBDC] may be incurred and in which its expenses shall be allowed and paid." 15 U.S.C. § 657c(c)(10).

dented for the word "other" to be omitted in such statutes. *See* 12 U.S.C. § 1422b(a)(4) (2000) (the Federal Home Loan Bank Board may "use the United States mails in the same manner and under the same conditions as a department or agency of the United States"); 25 U.S.C. § 2706(b)(5) (2000) (the National Indian Gaming Commission "may use the United States mail in the same manner and under the same conditions as any department or agency of the United States"). The language here is a reasonably apt way to ensure that the Postal Service will treat the NVBDC in the same manner as entities that unquestionably are federal agencies, and we would not draw any inference from any slight imprecision in the phrasing. Other factors that could weigh against the NVBDC's being a government corporation are that, in addition to having a federal charter, it is incorporated in the District of Columbia, *cf. Ehm v. Nat'l R.R. Passenger Corp.*, 732 F.2d 1250, 1255 (5th Cir. 1984) (in a case decided before *Lebron*, the court relies in part on the fact that Amtrak is only "nonfederally-chartered"), and that its directors, for statutory purposes, are not federal officers or employees, *see id.* (Amtrak's officers and employees are not federal employees). Nevertheless, that Congress made the NVBDC generally subject to the corporation law of the District of Columbia means little, because the NVBDC also has a federal charter; and the exemption of its directors from the usual restrictions binding federal employees is not inconsistent with the conclusion that the entity itself is a government corporation.[6]

One final argument against our conclusion, advanced by the NVBDC's President, is that the statute directs the NVBDC to "institute and implement a plan to raise private funds and become a self-sustaining corporation," 15 U.S.C. § 657c(k)(3); that the NVBDC cannot carry out its plans to meet this directive if it is subject to the rules applicable to a government corporation, Henry Letter at 2; and that, as a result, the NVBDC's "being designated a Government agency is clearly inconsistent with the intent of Congress," *id.* The statute, however, reveals no judgment by Congress about the feasibility of any particular business plan or about whether the NVBDC's current plan (or something close to it) would be essential to privatization, and an inconsistency between that plan and our conclusion does not, therefore, show that our conclusion is unfounded. Furthermore, that an entity is to be a self-sustaining corporation would not, in itself, mean that the entity is outside the government for statutory purposes. The Federal Deposit

---

[6] Under title 31, Congress subjects "Government corporations," as specially defined in 31 U.S.C. § 9101 (2000), to various financial controls. The special definition consists of a listing of corporations as either "mixed ownership" or "wholly owned" by the government. When Congress created the NVBDC, it did not add it to either list. The separate definition at 5 U.S.C. § 103 is independent of the definition in 31 U.S.C. § 9101, and the treatment in that section of title 31 by no means dictates the coverage under title 5. *See Ehm*, 732 F.2d at 1255 ("There is no statutory nexus between this definition [in title 31] and the definition that pertains and is expressly confined to Title 5."); *cf. Rainwater v. United States*, 356 U.S. 590, 591-92 (1958) (coverage of Commodity Credit Corporation by the Government Corporation Control Act is relevant to whether the Corporation is part of the government for purposes of the False Claims Act, which had no separate definition).

Insurance Corporation ("FDIC"), for example, is a self-sustaining entity, funded through premiums for deposit insurance. *See, e.g.*, 12 U.S.C. § 1815(d) (2000). It is nonetheless part of the federal government for many statutory, as well as constitutional, purposes. *See, e.g.*, *Stone v. FDIC*, 179 F.3d 1368, 1375 (Fed. Cir. 1999) (citing provisions of title 5, the court states that an FDIC employee "was a civil service employee who could not be dismissed except for cause or unacceptable performance"); *see also Dockery v. FDIC*, 64 M.S.P.R. 458, 460, 462 (1994) (FDIC is a government-controlled corporation, although not an "agency" under the "specialized meaning under 5 U.S.C. § 5102").

### III.

Under 31 U.S.C. § 9102, which is a provision of the Government Corporation Control Act, "[a]n agency may establish or acquire a corporation to act as an agency only by or under a law of the United States specifically authorizing the action." We believe that the NVBDC is an "agency" that, under this provision, is barred from "establish[ing] or acquir[ing] a corporation to act as an agency" unless it has specific statutory authority to do so.

Although we have not previously analyzed the scope of the term "agency" as it defines the entities ordinarily barred from establishing or acquiring corporations under 31 U.S.C. § 9102, we have considered the meaning of the term as it appears the second time in the provision ("to act as an agency"), and, under the usual canons of construction, we believe that this word should receive the same meaning in both places. The "presumption that a given term is used to mean the same thing throughout a statute" is "surely at its most vigorous when a term is repeated within a given sentence." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

In our fullest discussion of the meaning of "agency" in 31 U.S.C. § 9102, we concluded that a corporation established by employees of the Small Business Administration to liquidate the assets of a failed company would be acting as an "agency." Memorandum for Susan S. Engeleiter, Administrator, Small Business Administration, from J. Michael Luttig, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Government Corporation Control Act* at 8 (June 6, 1990) ("1990 Opinion"). We noted that, in title 31, the term "agency" is defined to mean "a department, agency, or instrumentality of the United States Government." 31 U.S.C. § 101 (2000). Applying this definition to the words in section 9102, we observed that "[i]n common usage, an instrumentality is a thing through which a person or entity acts" and that "[t]he term implies both that the thing is controlled by another actor and that the thing is or may be deliberately used to accomplish the actor's objectives." 1990 Opinion at 8 (footnote omitted). After reviewing the legislative history of the Government Corporation Control Act and judicial decisions about whether, in other contexts, entities were federal instrumentalities, we stated that "the test for government instrumentality status varies depending on the specific factual context and the purpose for which the determination is being

made"; that "[r]elevant factors include whether the entity was created by the government, the extent of government control over its operations, the source of the entity's funding, the purposes for which it was created, and the functions it performs"; and that "[s]ince the purpose of the Government Corporation Control Act was to assert greater federal dominion over the financial affairs of entities controlling federal funds, the source of the entity's funding is more important here than it might be in other contexts." *Id.* at 11, 12. Under this test, we determined that the corporation at issue acted as an "agency" within the meaning of the statute.

In 2000, we affirmed this approach. We wrote that "[s]ubsequent federal case law, as well as an opinion of the Comptroller General, supports this analytical framework," although we also acknowledged that these authorities "appear[ed] to recognize somewhat greater flexibility[, that is, a somewhat narrower understanding of 'agency,'] tha[n] we ha[d] endorsed." *Applicability of Government Corporation Control Act to "Gain Sharing Benefit" Arrangement*, 24 Op. O.L.C. 212, 219 (2000) ("2000 Opinion"). We noted that, in *Varicon Int'l v. OPM*, 934 F. Supp. 440 (D.D.C. 1996), a federal district court "[r]elying on *Lebron* . . . applied a similar multi-factor test to conclude that [a company performing background checks for the Office of Personnel Management] did not act as an agency" under 31 U.S.C. § 9102. 2000 Opinion, 24 Op. O.L.C. at 219. In that case, the entity in question was a private company owned by its employees, who were not employed by the United States; the United States had no control over the company's board, management, or employees, except as provided in contract; the United States did not own company stock; the United States could not appoint members of the board; and the United States provided no financial assistance, except insofar as it paid for services that the company performed under contract. 934 F. Supp. at 447. We further noted that the Comptroller General "applied similar criteria," under which instrumentalities of the United States include "'component parts of the federal government which are vested, by law, with the authority to act on behalf of the United States, or to fulfill some statutory mission of the federal government.'" 2000 Opinion, 24 Op. O.L.C. at 220 (*quoting In re the Honorable David Pryor*, 71 Comp. Gen. 155, 158 (1992)). *See also In re the Honorable Ted Stevens*, B-278,820 (Comp. Gen. Feb. 10. 1998).[7]

Following the approach of our opinions, as established in 1990 and affirmed in 2000, we believe that the NVBDC is an "agency" under 31 U.S.C. § 9102. The NVBDC was "created by the government," 1990 Opinion at 11, and is "to perform functions on behalf and for the benefit of the United States," *id.* at 13. As discussed above, the government also exercises a considerable degree of control over

---

[7] As we stated in 2000, "[t]he opinions and legal interpretations of the General Accounting Office and the Comptroller General often provide helpful guidance on appropriations matters and related issues," but "are not binding upon departments, agencies, or officers of the executive branch." 2000 Opinion, 24 Op. O.L.C. at 216 n.3 (citing *Bowsher v. Synar*, 478 U.S. 714, 727-32 (1986)).

the NVBDC. The President appoints the entire Board of Directors, and high-level federal officials serve on the Board, albeit as non-voting members, and thus have a direct role in the NVBDC's management. The United States, moreover, regulates the NVBDC's fiscal operations, as outlined above. Finally, the "source of the entity's funding is more important here than it might be in other contexts," 1990 Opinion at 12, and the NVBDC receives federal appropriations, even as it seeks to develop private sources of funds. We therefore conclude that the NVBDC is an "agency" subject to the statutory bar in section 9102 against establishing or acquiring a corporation without specific statutory authority.

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*